Levitt, Appellant, *v.* Johnstown Office Supply Co.

Argued April 22, 1931.

Be-
fore TREXLER, P. J., KELLER, LINN, GAWTHROP, CUN-
NINGHAM, BALDRIGE and DREW, JJ.

*William H. Burd,* for appellant.

*Frank P. Barnhart,* for appellee.

OPINION BY KELLER, J., July 8, 1931:

This is an action by the indorsee holder of a trade acceptance against the acceptor. It is a negotiable instrument, and hence, in the absence of proof, either appearing in his own case or presented by the defendant, that the title of the payee who negotiated the instrument to him was defective, the plaintiff is to be deemed prima facie a holder in due course: Sec. 59 of the Negotiable Instruments Law of 1901, P. L. 194; Putnam v. Ensign Oil Co., 272 Pa. 301. What is meant by "defective title" within the meaning of this section is set forth in section 55.[1]

The plaintiff, accordingly, at the trial offered the trade acceptance in evidence, in connection with certain admissions in the pleadings, proved its endorsement by the payee, Adjustable Displays, Inc., and that he was the owner, and rested.

The defendant, evidently having in mind the case of McChesney v. Guernsey, 61 Pa. Superior Ct. 490, offered to prove that the signature of its president and general manager to the trade acceptance "was obtained [by the agent of the drawer and payee] by misrepresentation and fraud; that there was a failure of consideration; that there was a promise and representation made on behalf of said agent that said trade acceptance would not be negotiated." But the facts given in evidence following the offer failed to measure up to those on which the ruling in McChesney v. Guernsey was based. The defendant in that case, according to his rejected offer of proof, purchased no goods from the drawer and payee of the draft; a package of jewelry was left in his store on consignment.

Note 1. "Section 55. The title, of a person who negotiates an instrument is defective, within the meaning of this act, when he obtained the instrument or any signature thereto by fraud, duress or force, and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud.

Here the defendant's own evidence showed a written order dated May 5, 1928, (the same date as the trade acceptance) signed by defendant, to Adjustable Displays, Inc., for fifteen fixtures @ $40 each, $600, less discount, 25%, $450. "Terms 90 days, T. A.," evidently, in the circumstances here present, an abbreviation for "Trade Acceptance." In the McChesney case there was a distinct representation that the draft would not be negotiated; in this case, there was none. Not one of the four persons called as witnesses on behalf of the defendant who were present at the interview between Mr. Patterson and the agent testified to any such agreement or promise; their testimony in that connection being that the agent said: "We are just building this organization and this establishes us in the banks. We are trying to establish this on an economical line and this gives us a good standing with the banks. We are taking in these trade acceptances and they will be the means of helping us to do a larger business" (24-a) ; and, "Their company was young and they were having a little difficulty getting money at the bank, and by having the trade acceptance it would give them borrowing power at their bank and show the bank that they were actually putting out these fixtures" (30-a) ; and, "They wanted to manufacture on a larger scale and in order to do that they had to get some working capital and they wanted the trade acceptance to deposit so they could show the banks that they were selling these fixtures in different places in the United States outside of New York City so they could get more credit at the banks;......by showing the bank the trade acceptance, the bank would see that they were doing business and lend them more money" (35-a). The proof did not sustain the offer. See Homewood Peoples Bank v. Simon, 279 Pa. 118. Furthermore when negotiable paper is given for value and is an actual obliga-

tion of the maker or acceptor, its legal effect cannot be affected or destroyed by an alleged parol agreement not to negotiate it. In the McChesney case the draft was alleged to have been given without consideration, merely by way of memorandum for goods to be shipped on consignment. See Ward v. Zeigler, 285 Pa. 557.

Mr. Patterson's testimony further showed that he knew he was giving a trade acceptance due in ninety days for the goods to be shipped under the order; but he was over-persuaded by the agent's promise to send a man to assist in disposing of the fixtures, and by his rosy assurance that with the help of this man the fixtures would be practically all sold "before the trade acceptance is due." The written order for the fixtures contained a provision that the company would "furnish a special field-man for the purpose of promoting sales and 'placing' at least one-half of the fixtures shipped;" and the further agreement that if any fixtures remained unsold for ninety days from date of shipment, the company would take back the balance of the fixtures at dealer's prices—the representation being that the defendant had nothing to lose because the fixtures would probably all be sold within ninety days, and those not sold by that time could then be returned. The defendant's real defense to the payment of the trade acceptance is the drawer's alleged failure to carry out its contract; although Mr. Patterson's own evidence shows (27-a) that he attempted to return the unsold fixtures before the date fixed in the contract. The seller of the goods could not be affected by the unauthorized casual conversation of the "field-man," who later came to assist in the "placing" of the fixtures. The fixtures were delivered as ordered, but, it was alleged, the field-man did not assist or succeed in selling them for the defendant. But failure of consideration does not constitute such defect of title as to put the holder to the burden of

proving that he acquired the title in due course: Ruck v. Levine, 239 N. Y. Supp. 437, and there was no allegation or proof that the plaintiff had any notice or knowledge of such failure of consideration when he acquired title. Nor was the drawer's breach of its agreement to do something in the future relative to assisting in the sale of the fixtures such "fraud" as to render the title to the trade acceptance "defective," within section 55 of the Negotiable Instruments Law, (Bank of Hooversville v. Sagerson, 283 Pa. 406; United States Natl. Bank v. Evans, 296 Pa. 541; Lowry Natl. Bank v. Hazard, 223 Pa. 520; Homewood Peoples Bank v. Simon, supra), and thus put on the indorsee holder the affirmative burden of proving his title in due course.

Recent decisions of the Supreme Court (see Bank of Hooversville v. Sagerson, supra; Second Natl. Bank v. Yeager, 268 Pa. 167; Homewood Peoples Bank v. Simon, supra; Citizens Natl. Bank v. Wisecarver, 300 Pa. 60; Speier v. Michelson, 303 Pa. 66), have restored to negotiable paper much of its security in the hands of third parties, which had been weakened by several prior cases.

A "trade acceptance" is a recognized term. It is defined in Regulation A of the Federal Reserve Board, Section V (a)—(Aug. 1, 1930) "as a draft or bill of exchange, drawn by the seller on the purchaser of goods sold, and accepted by such purchaser." Its purpose is to make the book account liquid and permit the seller to raise money on it before it is due under the terms of sale. When so given in the purchase of goods, as the actual obligation of the acceptor, to attach a parol condition that it shall not be negotiated would not vary, but destroy, its legal effect and negotiability, as much so as an agreement that the acceptor of a bill of exchange or the maker of a promissory note should not be personally liable for its pay-

ment. See Fidelity T. & T. Co. v. Garland, 291 Pa. 297; Bank of Hooversville v. Sagerson, supra. Such a condition should be expressed in the instrument itself, or its omission shown to have been procured by fraud, accident or mistake: Speier v. Michelson, supra. It strikes at the very heart of negotiable paper, and attempts by a parol condition to transform it into non-negotiable paper. When given as an actual obligation in the purchase of goods such an allegation does not come within the term used in section 55 of the Negotiable Instruments Act, "or when he negotiates it in breach of faith or under such circumstances as amount to a fraud": Vergil v. Johnson, 204 N. W. 36 (Minn.). That clause applies to cases where value is not given by the negotiator, and the instrument is diverted from the purpose for which it is given, or used contrary to such purpose; as, for example, where a note is given to renew a prior note and is also negotiated instead of used to take up the prior note; or where a note conditionally delivered is negotiated, though the condition is not performed: (Home State Bank v. Martin, 196 Iowa 1092; 195 N. W. 977); or where a note is given merely as collateral to a prior note and is also negotiated; or where it is negotiated by the payee after it is paid, (Delaney v. Brownwood, 73 Colo. 83, 213 Pac. 578) or after his agreement to return it, (Arnowitz v. Cohen, 87 Pa. Superior Ct. 133) and similar cases.

But in this case, as we have seen, the proof is wholly lacking that there was any such promise or agreement, or anything more than the declaration of an intention so to use it as to obtain more money or credit at the bank.

On full consideration of all the evidence we are of opinion that the defendant failed to present any testimony tending to show that the title of the drawer and payee, Adjustable Displays, Inc., which negotiated the

trade acceptance, was defective within the definition of section 55 of the Negotiable Instruments Law, and therefore imposed no burden of affirmative proof on the plaintiff that he was a holder in due course; that he was entitled to rely on the prima facies of his being a holder in due course in the absence of evidence on behalf of the defendant measuring up to the standard fixed by section 55, supra; and was entitled to binding instructions in his favor, instead of the directed verdict for the defendant, which in no event could be sustained, because, even if sufficient to go to the jury, the defendant's case depended on oral testimony, which would have been for the jury to pass upon: Second Natl. Bank v. Hoffman, 229 Pa. 429, 433.

The assignments of error are sustained. The judgment is reversed and is now entered for the plaintiff for $450 with interest from August 3, 1928.