International Finance Company, Appellant, *v.* Magilansky et ux.

Argued April 29, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*William S. Doty,* and with him *Thomas A. Thornton* of *Doty and Thornton* and *Nathan M. Katz* and *J. Benjamin Alpern* of *Katz and Alpern,* for appellant.

*Reuben Fingold,* for appellees.

Opinion by Trexler, P. J., July 14, 1932:

Judgment was entered on a warrant of attorney contained in a note, signed by the defendants Magilansky and wife, payable to the United Home Improvement Company, and by it endorsed to the International Finance Company, Inc.

There was a petition to open presented to the lower court and a great deal of testimony taken. The court directed the judgment to be opened, confining the issue to (a) lack of consideration by reason of failure to install the furnace in accordance with the terms of the contract; and (b) proof of payments made by defendants on account of the note in suit. The court found there was no fraud in the procuring of the note. It had the right to confine the issue to certain limits:

Huston Township Co-operative Mutual Fire Insurance Co. v. Beale, 110 Pa. 321; McMurray's Heirs v. The City of Erie, 59 Pa. 223.

The note, in question, was given in payment of the installation of a heating plant in the house of the defendants. The payee of the note failed to carry out its contract, and the defendants claim that the lack of consideration can be shown as a defense to the note in the hands of the endorsee. The court took the position that the endorsee had or was presumed to have had knowledge of the infirmity of the note in that the consideration for which it was given had failed. It gave as a reason for this conclusion the following: "It is significant that the owner of the International Finance Company was at one time the owner of the United Home Improvement Company, which he sometime ago transferred to the present owners. This owner of the plaintiff company was thoroughly familiar with the business of the United Home Improvement Company and its method of doing business. The judgment note which was attached to or connected with the furnace contract has the name of the International Finance Company, Inc., printed on the endorsement on the back of it, and the fact is that all the notes taken by the United Home Improvement Company were transferred to the International Finance Company, Inc., which company financed the business of other enterprises than the United Home Improvement Company." The transfer, to which the court alluded, took place two years before this note was negotiated. Granting, arguendo, that the endorsee of the note knew that the payee was in the business of installing furnaces, and that it took notes of the same character as the one in suit in its various transactions, this knowledge did not charge him with notice of the infirmity of this particular note. There is an entire absence of proof, (in fact, there is testimony to the contrary) that the endorsee at the time the note

was negotiated had anything to do with the payee company, had any interest in the concern, or had any intimate knowledge of its transactions. The treasurer of the finance company, called by defendants, for cross-examination, testified that those connected with the corporation which was the endorsee of the note knew nothing about the business of the improvement company; another witness, likewise called for cross-examination, testified to the same effect, and the testimony of these two witnesses was uncontradicted. No knowledge of existing equities could be inferred from the former connection of plaintiffs' president with the company to whom the note was given, and it is requisite to the defendants' case that such knowledge appear.

The note in question was a negotiable instrument, it was payable in installments, and a clause contained therein, provided that a failure to pay any installment when due would make the whole note due: Home Credit Company v. Preston, 99 Pa. Superior Ct. 457. Plaintiff was entitled to the presumption that it was a holder in due course until evidence was produced showing its title to be defective: Dull v. Mitchell, 283 Pa. 88; Act of May 16, 1901, P. L. 194, Section 59; Putnam v. Ensign Oil Company, 272 Pa. 301. The failure of the payee to carry out its contract does not affect the title of one who is the holder in due course: Levitt v. Johnstown Office Supply Co., 103 Pa. Superior Ct. 76. Knowledge on the part of the endorsee of a negotiable note that the consideration for it was something to be performed in the future does not imply notice to him of the failure of consideration: Detroit Savings Bank v. Towers, 42 Pa. Superior Ct. 246.

Although we do not think it was required as part of plaintiff's case, we note that on November 7, 1930 defendants signed a "satisfaction slip" in which they certified that the United Home Improvement Company had completed all the work required under the con-

tract and acknowledged that they had given a negotiable note in payment. On the slip was printed in red ink, "do not sign this order until work is completed to your satisfaction." The lower court apparently considered this weakened plaintiff's case and showed conclusively that the plaintiff corporation had full knowledge of the fact that the consideration for the note was the installation of the furnace and, therefore, did not acquire the title to the note for value without notice, and the note was subject to the equities between the original parties. The court here fell into manifest error, for as we have already pointed out, knowledge on the part of the endorsee of the negotiable note that the consideration for it was something to be performed in the future does not imply notice to him of the failure of the consideration. The satisfaction slip was in the nature of an assurance to the endorsee that there was no defense to the note and instead of weakening his position as a holder in due course, it imposed an additional burden on the defendants, to overcome its effect.

The appellees allege that the note and contract were one paper. The note itself in its upper margin shows that it was attached to another paper, and there had been perforations, which evidently were made so that the note could be readily detached. It is argued that if the note was attached to the contract at the time it was signed, its subsequent separation constituted a fraud. If this note had been an integral part of the contract and incorporated in it and the parties had subscribed it, no doubt it would have been a fraud on the defendants to have separated a portion of that which it was the evident intention should remain entire: Jensen v. Braslafsky, 73 Pa. Superior Ct. 323. In this latter case there was an entire contract, signed at one place; the negotiable note which formed part of it was detached, thus leaving the upper part in the condition of an unsigned order for goods. In the present case both the contract and the note were separately

signed and if joined (which is not shown) had a perforated line indicating that their severance was contemplated. Magilansky, when asked if it was all one paper, said he could not tell, and on cross-examination said he had signed two. He knew he was signing a paper to pay for the furnace. His wife disclaimed all knowledge of the details of the transaction. A week later Magilansky, was called by counsel and over objection, stated that there was but one paper. This contradiction, he claimed, had its origin in a dream. "It came in a dream, I dream't about it." This is hardly testimony of such clear, precise and indubitable character as is required to set aside a solemn written obligation: Kline v. Fitzgerald Bros., 267 Pa. 468; Saslow v. Saslow, 100 Pa. Superior Ct. 414, and Weimer v. Keiper, 276 Pa. 358.

As to the payments made on the judgment since entry there was no dispute, and nothing that required the intervention of a jury. The petitioners claimed certain credits and plaintiff admitted them. If plaintiff should issue execution without allowing these credits, he would gain nothing by such action for the lower court has control of the writ and could readily right the wrong.

The assignments are sustained, the order of the lower court is reversed and the judgment is reinstated.