Colonial Finance Company, Appellant, *v.* Hoover et ux.

Argued October 16, 1933.

Before Trexler, P. J., Keller, Cunning-
ham, Baldrige, Stadtfeld, Parker and James, JJ.

*J. Benjamin Alpern,* and with him *Nathan M. Katz* of *Katz & Alpern,* for appellant, cited: International Finance Corp. v. Phila. Wholesale Drug Co., 312 Pa. 280; Howard Fire Insurance Co. v. Bruner, 23 Pa. 50.

*Oscar G. Wickersham* of *Wickersham & Wickersham,* and with him *William N. McNair,* for appellee, cited: First National Bank of N. J. v. Cattie Bros., 285 Pa. 202; Roseman v. Feldenkreis, 78 Pa. Superior Ct. 243.

Opinion by Baldrige, J., February 1, 1934:

The makers of a negotiable note presented a petition to open a judgment entered thereon by confession, alleging (1) a lack of consideration, and (2) that the plaintiff was not a bona fide holder for value before maturity. A rule was granted, which the court, after hearing, made absolute. This appeal followed.

The failure of consideration does not constitute such a defect of title as to put the appellant to the burden of proving that it acquired the title in due course: Levitt v. Johnstown Office Supply Co., 103 Pa. Su-

perior Ct. 76, 157 A. 804; International Finance Co. v. Magilansky et ux., 105 Pa. Superior Ct. 309, 161 A. 613.

The more serious question, and the one upon which the appellees rely chiefly, is, Was the endorsee a holder in due course? The depositions taken show that the Morton Construction Company, of Pittsburgh, and the appellees entered into a written agreement at Harrisburg on November 3, 1932, whereby the construction company was to veneer, with brick, the Hoover house for the consideration of $1,492. The appellees allege that when the contract was executed, a note was signed, in the sum of $1,492, which provided for a cash payment of . . . . . . dollars on December 30, 1932, "and the balance in . . . . . . equal monthly installments of . . . . . . as beginning . . . . . . , 19. . . . . . , and continuing on the same day of each and every month thereafter until the full amount thereof is paid, with interest from date of maturity at six per cent." Mr. Hoover testified: "They told me I could make my payments according to suit my purse, that they would give me eleven years to pay it;" that it was orally agreed that the note was to be taken to Pittsburgh to obtain the approval of the construction company, where the amount of the payments was to be determined, then it was to be brought back for his approval and if satisfactory was to be turned over to a Harrisburg building and loan association for collection, by installments, without any additional charge or interest. Instead of carrying out this alleged plan, the words heretofore quoted, providing for installment payments, had "X" marks placed through them, and the entire amount of the note was made payable on December 30, 1932, and endorsed to the appellant. There remained, unerased, however, a later provision in the printed portion of the note, as follows: "Failure to meet any payments when due shall render the installment feature of this obligation void and the remaining balance shall be-

come immediately due and payable at the option of the holder hereof.'' With these changes, alleged to have been made without the consent or knowledge of the maker, which, of course, amounted to material alterations, we have a note payable in a lump sum on December 30, 1932, with a clause referring to payments by installments.

Section 55 of the Negotiable Instrument Law of May 16, 1901, P. L. 194, 202, ch. I, art. IV (56 PS §135), reads as follows: ''The title of a person who negotiates an instrument is defective, within the meaning of this act ...... when he negotiates it in breach of faith or under such circumstances as amount to a fraud;'' and under section 59, (56 PS sec. 139) where a title to an instrument is defective, ''the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course.''

The makers having testified that the negotiable instrument was materially altered and that it was given for one purpose and used for another, a breach of faith was sufficiently established to require the endorsee to assume the burden of proving that it was a holder in due course (First National Bank of N. J. v. Cattie Bros., 285 Pa. 202, 131 A. 731), and that question is usually one of fact: 8 C. J. 1061, §1376. In Roseman v. Feldenkreis, 78 Pa. Superior Ct. 243, 245, where judgment was asked for want of a sufficient affidavit of defense, it was alleged that the note in suit was not drawn as authorized and directed. The court below made the rule absolute and this court reversed, stating: ''The affidavit clearly avers the facts which show that advantage was taken of the defendant and a fraud practiced on him. This, under section 59 of the [Negotiable Instrument Act], puts the holder to his proof that he has acquired the note in due course and *this requires that the matter proceed to trial.''* (Italics are ours.) A very interesting discussion ap-

pears in Colonial Trust Company v. Getz, 28 Pa. Superior Ct. 619, as to the character of evidence required to create an issue of fact for a jury when an instrument is alleged to have been altered. It was held there that where it is doubtful upon inspection whether or not there has been an alteration, it is not reversible error to admit the note in evidence and let the jury pass upon that question of fact. See, also, Berks County Trust Co. v. Lyte, Admr., 250 Pa. 543, 95 A. 719.

True, Jacob Fried, the holder of the note, testified in his depositions that he was the treasurer of the Colonial Finance Company, and that on November 7, 1932, he discounted the note, which was completely filled out and in the form as it was entered, and had attached thereto, by perforation, a certificate of "No Defense;" that he gave a check of the Colonial Finance Company to the Morton Mfg. Company, in the sum of $1,342.80. But when this check was offered in evidence, it appeared to be his individual check—not that of the Colonial Finance Company. The appellant, in order to be protected from the defense of prior equities, must prove as a fact that the instrument was taken in the regular course of business, and it will not be deemed to have been so taken when it was not a usual mercantile transaction: Fehr v. Campbell, 288 Pa. 549, 566, 567, 137 A. 113.

The appellant invoked section 17 (4) of the Negotiable Instrument Act (56 PS §22), which provides that where there is a conflict between the written and printed provisions of the instrument, the written provisions prevail. That section is inapplicable in this case—it contemplates the existence of an ambiguity or inconsistency in the instrument. But where there has been an apparent alteration, as here, the makers are not to be deprived of an opportunity of showing the alleged breach of faith and all the circumstances that would properly affect the holder's title.

The questions raised by the appellant are for the determination of the jury under proper instructions from the court.

Order of the lower court affirmed at appellant's costs.