[No. 27542. Department One. July 7, 1939.]

LEGAL DISCOUNT CORPORATION, *Respondent,* v. MARTIN HARDWARE COMPANY, *Appellant.*[1]

[1]Reported in 91 P. (2d) 1010.

*Frank C. Owings,* for appellant.

*Earle C. Lassen,* for respondent.

ROBINSON, J.—Legal Discount Corporation brought this action to recover on four trade acceptances, aggregating $248.29. The four instruments were drawn by Martin Hardware Company on Capitol Park Building Company, payable to the order of the Martin Hardware Company at Olympia National Bank, and each was, on its date of issue, accepted in writing by the drawee. They were payable, respectively, on February 10, 16, 20, and 28, 1932. The Martin Hardware Company indorsed the bills in blank and transferred them to the Olympia National Bank, which credited the amount of each, less discount charges, to the hardware company's account.

On January 22, 1932, the affairs of the bank were taken over by the comptroller of the currency. The

acceptances were not paid by the Capitol Park Building Company on their due dates or otherwise. Late in 1937, or early in 1938, the exact date not being shown, the assets of the bank remaining in its receiver's hands, including these acceptances, were sold by him to certain individual purchasers, who assigned them to the plaintiff, Legal Discount Corporation.

In February, 1938, it brought this action against the Martin Hardware Company and Capitol Park Building Company, the acceptor. The building company, however, was not served with process and made no appearance in the suit. A separate cause of action was pleaded on each instrument. In each case, the plaintiff sued as a transferee of a holder in due course, alleging in the first cause, and similarly in the other three:

"That for valuable consideration the said Olympia National Bank of Olympia, Washington, became the holder in due course of said trade acceptance; that the plaintiff herein became the purchaser of said instrument through the Receiver of said Olympia National Bank and is now the owner and holder thereof; that said sum of $65.00 is now due and owing the plaintiff herein together with interest thereon at the rate of 6% per annum from February 16, 1932; that no part of said sum has been paid; that demand therefor has been made and payment refused."

It was not alleged, however, in any of the four causes, that the defendant Martin Hardware Company was ever given notice that the acceptances had been dishonored by the acceptor, or even that the instruments were ever presented to the acceptor for payment.

The Martin Hardware Company demurred on several grounds, including want of sufficient facts, and its demurrer was overruled. It then answered, setting up various defenses to each cause, and among them, in each instance, that it was never served with any

notice of protest or of the failure of the acceptor, Capitol Park Building Company, to pay the acceptance on the due date thereof, and that it first learned in January, 1938, that the obligation sued upon had not been paid.

At the trial, plaintiff called its president as a witness. His evidence was wholly devoted to establishing that the plaintiff got good title to the instruments by transfer from a holder in due course, and that the obligations had never been paid. The instruments were offered as exhibits, and the plaintiff rested.

Defendant's counsel challenged the sufficiency of the evidence, pointing out that there was no evidence that his client had ever been notified that the instruments had been dishonored, and none that an attempt had ever been made to collect the obligation from the building company, the party primarily liable; and, furthermore, called attention to the fact that the plaintiff was not even attempting to do so in this action, since it was admitted that the building company, though nominally made a party, had not been served with process. This challenge was denied, and the defendant put to its defense.

Concerning the defendant's case, it is only necessary, for the present inquiry, to say that it submitted evidence that it was never given any notice of dishonor and was not even informally made aware that the acceptances had not been paid until its president received a telephone call from the receiver's office concerning them on or about October 5, 1937; that he went to the receiver's office and the acceptances were shown to him, and he was told that they had not been paid. This evidence was not in any way rebutted, nor is there evidence anywhere in the record that the bank or its receiver, or any successor in interest, ever presented them to the acceptor or demanded payment

from the drawer, unless what occurred on October 5, 1937, five years and eight months after the acceptances, amounted to a demand.

The court found only the facts alleged in the complaint; that is to say, there is no finding that the instruments were ever presented for payment to the acceptor or notice of dishonor ever given to the indorser. Judgment was entered for principal and interest in accordance with the demand of the complaint.

In interposing its demurrer for want of facts, its challenge to the sufficiency of the evidence at the close of plaintiff's case, and in now urging that the findings did not warrant the conclusions or support the judgment, the defendant relied, and now relies, primarily upon § 89 of the uniform negotiable instruments law, which section appears in Rem. Rev. Stat. as § 3479 [P. C. § 4160]:

*"Except as herein otherwise provided,* when a negotiable instrument has been dishonored by nonacceptance or nonpayment, *notice of dishonor must be given* to the drawer and *to each indorser, and any* drawer or *indorser to whom such notice is not given is discharged."* (Italics ours.)

The plaintiff, at the trial, pointed to the opening words of the section, "Except as herein otherwise provided," and relied upon § 115 of the uniform negotiable instruments law, which appears in Rem. Rev. Stat. as § 3505 [P. C. § 4186], the material part of which reads as follows:

"Notice of dishonor is not required to be given to an indorser in either of the following cases—  . . .

"3.  Where the instrument was made or accepted for his accommodation."

The court held that the Martin Hardware Company was not entitled to notice of dishonor by reason of the

provision contained in subsection 3. The case turns wholly upon the proper interpretation and application of that subsection.

The following is a copy of the trade acceptance sued upon in the first cause of action. Each of the others is in the same form:

"No. 115072                                    Dec. 16, 1931
"To Capitol Parks Bldg. Co.           Olympia, Wash.
"On February 16, 1932, pay to the order of Martin Hardware Co. Sixty-five and no/100 Dollars ($65.00). The obligation of the acceptor hereof arises out of the purchase of goods from the drawer. The drawee may accept this bill payable at any bank, banker or trust company in the United States which he may designate.
"Accepted at Olympia on Dec. 16, 1931
                                    Martin Hardware Co.
"Payable at Olympia National Bank     By G. D. Martin
"Bank Location           Olympia
"Buyer's Signature Capitol Park Bldg. Comp.
"By Agent or Officer L. E. Dawley, Pres.       942
                                         D 1.00"

The first indorsement on the back of the instrument reads: "Martin Hardware Co. by G. D. Martin, Pres."

▇ This instrument is one of that type of bills of exchange technically known as a trade acceptance.

"A 'trade acceptance' is a recognized term. It is defined in Regulation A of the Federal Reserve Board, Section V (a)—(Aug. 1, 1930) 'as a draft or bill of exchange, drawn by the seller on the purchaser of goods sold and accepted by such purchaser.' Its purpose is to make the book account liquid and permit the seller to raise money on it before it is due under the terms of sale. . . ." *Levitt v. Johnstown Office Supply Co.*, 103 Pa. Super. Ct. 76, 157 Atl. 804, 806.

They are commonly made use of in situations like the following: A has sold goods to B and needs cash to replenish his stock, but B is not able to pay for the

goods immediately, though he will be able to do so in sixty or ninety days. A draws a bill on B, reciting that the obligation arises out of the purchase of goods from A. B accepts the bill in writing, thereby agreeing to pay the amount involved on a day certain. A indorses the instrument and discounts it at his bank, and thus acquires the needed funds. When the transaction is thus completed, the bank has become a party to the instrument, that is, the holder, and B is the other party, the maker. A is now only an indorser. B, of course, is primarily liable to pay the obligation when due. A is only secondarily liable. The situation is substantially the same as it would have been had B given A his promissory note and A had transferred it to the bank by indorsement.

"Until the bill has been accepted, the drawer is the primary debtor. After acceptance, the drawer becomes secondarily liable, and his liability is the same as that of a first indorser upon a promissory note.

"The effect of the acceptance of a bill is to constitute the acceptor the principal debtor. The bill becomes by the acceptance very similar to a promissory note—the acceptor being the promissor, and the drawer standing in the relation of an indorser." Ogden, Negotiable Instruments, 71, § 74.

See, also, Daniels, Negotiable Instruments (7th ed.), § 649; 8 Am. Jur., Bills and Notes, § 526, and cases cited in support of the text.

■ The first indorser of a negotiable instrument does not unconditionally engage to pay it if the person primarily liable does not, but only to do so if it be dishonored and the necessary proceedings on dishonor be duly taken. Rem. Rev. Stat., § 3457 [P. C. § 4137]. If the necessary proceedings on dishonor are not taken, as we have already seen, the indorser is discharged. Rem. Rev. Stat.; § 3479 [P. C. § 4160]. This means that, in order to hold the indorser, the holder must

present the note or bill to the maker or acceptor, as the case may be, and, if he refuses to make payment, give the indorser immediate notice of dishonor. When the holder and indorser live in the same town, immediately means not later than the next day. Rem. Rev. Stat. § 3493 [P. C. § 4174]. Thus it appears, as is said in *Massell v. Prudential Ins. Co.*, 57 Ga. App. 460, 196 S. E. 115, 121, that the liability of every indorser is a contingent one. There is neither allegation in the complaint nor proof in the record that the bank or its receiver did any of the things required to make the hardware company's liability absolute.

The respondent does not seem to take serious issue with the rules of law which we have thus far discussed, but it contends that they do not apply in this case, asserting that the facts shown bring it within the purview of Rem. Rev. Stat., § 3505 [P. C. § 4186]. This section, as we have seen, provides that notice of dishonor is not required to be given to an indorser "where the instrument was made or accepted for his accommodation." Since the indorser, whom it is sought to charge in this action, is the Martin Hardware Company, we get down to the question: Were the instruments accepted for its accommodation?

The respondent, in its argument in this court, relied heavily, and, indeed, almost wholly, upon the case of *Fosdick v. Government Mineral Springs Hotel Co.*, 115 Wash. 127, 196 Pac. 652. Although that case bears but little resemblance to this case in its facts, the language used in the opinion strongly supports the contention made in this case that the bank "accepted" the instruments for the accommodation of the indorser, Martin Hardware Company, within the meaning of subsection 3 of § 3505. It is assumed that a similar reliance was placed upon the *Fosdick* case in the lower

court, and it seems probable that the trial court felt bound by that decision.

It is unfortunate that the case was not specifically dealt with in the later case of *Clausen v. Forehand,* 152 Wash. 310, 277 Pac. 827, which, in its reasoning, is in every way contra to it. It is not only not referred to in that decision, but has not been cited by the court in any other case, with the exception of *Black v. Emporium Dry Goods Co.,* 129 Wash. 100, 224 Pac. 591, and there, only by way of distinguishing it. It has, however, been freely criticized by other courts, and by text writers as well. In *Lucas v. Swan,* 67 F. (2d) 106, 90 A. L. R. 210, a case decided in 1933 by the United States circuit court of appeals, fourth circuit, it is said:

"We have carefully considered the cases of *Fosdick v. Government Mineral Springs Hotel Co.,* 115 Wash. 127, 196 P. 652, . . . upon which the receiver relies. In the Fosdick Case, we think that the court has misinterpreted the meaning of 'accepted' as used in the statute; and we cannot follow its reasoning to the effect that a bank which discounts a note for an insolvent maker is to be held to have 'accepted' it for the accommodation of the indorsers."

In the Fifth Edition of Brannan's Negotiable Instruments Law, a standard text on that subject, the author, in discussing the *Fosdick* case, at p. 869, says, in part:

"It is clear that the indorsers were accommodation parties and that the note was not made for their accommodation. The court, however, took the extraordinary view that the note was 'accepted' for their accommodation by the payee; the word clearly does not refer to the receiving by a holder but to the acceptance of a bill of exchange by the drawee."

We feel compelled to acknowledge that these criticisms are well founded. Code Section 3505 provides that notice of dishonor is not required to be given to an indorser,

"3. Where the instrument was made or accepted for his accommodation."

A bank which discounts a negotiable instrument does not accept it or become an acceptor. It buys it and becomes a holder. In the case at bar, the acceptor, that is, the party who "accepted," and the only party who did any accepting, was the Capitol Park Building Company. The inquiry is, therefore, further reduced to this question: Did the Capitol Park Building Company accept these instruments for the accommodation of the Martin Hardware Company, the indorser, from whom recovery is sought in this action? The answer to that question appears on the face of the instruments. The building company did not accept the bills to accommodate the hardware company, but it accepted them to pay the hardware company for goods which it had purchased from it. It, therefore, follows that subsection 3 of § 3505 has no application in the case at bar.

For a discussion of the proper interpretation of subsection 3, § 3505, and as to why that provision was included in the negotiable instruments law, see *Commercial Nat. Bank v. Ashley,* 133 S. C. 304, 130 S. E. 890. See, also, *First Bank v. Bach,* 98 Ore. 332, 193 Pac. 1041; *Nolan v. Brown,* 152 La. 333, 93 So. 113; *Liberty Bank & Trust Co. v. Hand,* 269 Ky. 342, 107 S. W. (2d) 285; Daniels, Negotiable Instruments (7th ed.), §§ 1086 and 1248; 8 Am. Jur. § 632.

Some attempt is made to support the judgment on the authority of *Armour & Co. v. Guaranty State Bank,* 253 S. W. (Tex. Civ. App.) 1110, and the following excerpt from that decision is quoted in the respondent's brief, as follows:

"The legal title and right to collect the checks was vested in the appellee bank and that payment therefor was made, and hence, in form, a sale, yet the transac-

tion, in substance, as before indicated, was apparently at least for the mere accommodation of Armour & Co. In its essence, the appellee bank simply took the checks for collection. It was not a purchase in the sense of commercial law, but a means adopted at the instance of appellant's undisputed agent to forthwith receive payment and await later actual collection from the makers."

But, as pointed out early in this opinion, the respondent plaintiff sought recovery by suing upon the instruments themselves and as the rightful holder and owner thereof through transfer from a holder in due course. The record of the proceedings in the trial court shows no departure from that theory. The appellant, therefore, had no opportunity to defend against the theory that the bank merely took the acceptances for collection. Furthermore, had the cause been prosecuted on the theory that the bills were received for collection only, with the right to charge back, there is sufficient in the record and missing from the record to indicate that it could not have been successfully maintained. There is affirmative evidence that the defendant was not informed that collection had not been made until the bills had been overdue more than five years and eight months; and there is, moreover, no evidence at all that collection from the party primarily liable was ever attempted.

When a holder of a negotiable instrument seeks to charge an endorser, he must allege and prove that he gave him due notice of dishonor, or that such notice was waived; and, when not waived, proof of the giving of the notice is absolutely necessary to establish his cause of action. Rem. Rev. Stat., § 3479 [P. C. § 4160]. It has been held that, in a case where a complaint in such an action did not aver presentment and notice of dishonor or a legal excuse for failure, and even though the point was not raised by answer or de-

murrer, proof thereof was, nevertheless, required in order to allow a recovery, since, in the absence of such proof, the right to recover does not affirmatively appear. *Thompson v. Divine*, 73 Ind. App. 113, 126 N. E. 683. In the case at bar, the point was raised on demurrer, by answer, by challenge to the sufficiency of the evidence, and by questioning the sufficiency of the findings to support the conclusions and judgment.

The judgment appealed from is reversed, and the case will be dismissed.

BLAKE, C. J., STEINERT, MAIN, and JEFFERS, JJ., concur.

[1]Reported in 91 P. (2d) 1001.