[No. 31174.   Department One.   March 15, 1950.]

GEORGE M. AISTED, *Appellant,* v. HAROLD A. GRIM *et al.,*
*Defendants,* WILLIAM E. NEAL *et al., Respondents*
*and Cross-appellants.*[1]

*Jones, Birdseye & Grey,* for appellant.

*Bogle, Bogle & Gates, Thomas L. Morrow,* and *Arthur G. Grunke,* for respondents and cross-appellants.

[1]Reported in 215 P. (2d) 877.

SIMPSON, C. J.—Plaintiff instituted this action to recover sums of money claimed to be due upon two promissory notes, one in the amount of twenty-two hundred fifty dollars, the other in the amount of sixty-five hundred dollars, the latter payable on the installment plan. It was alleged in the complaint that the notes were signed by defendants, Harold A. Grim and Beta I. Grim, husband and wife, and made payable to defendant, William E. Neal; prior to due date, defendant William E. Neal endorsed the notes and delivered them to plaintiff; the notes were due and payable and had not been paid. Plaintiff demanded judgment for sums indicated in the notes, and for interest and attorney's fees.

The answer submitted by defendants Neal admitted the making of the notes and of transfer to plaintiff, but denied that delivery to plaintiff constituted an endorsement or that they incurred any liability by the signing of the notes. As an affirmative answer, the defendants Neal alleged that the notes were secured by "a preferred ship mortgage" executed by defendant Harold A. Grim. Further, that February 15, 1947, defendants Neal and plaintiff entered into a certain contract (dated January 7, 1947) for the purchase and sale of real property, and, as a part of the transaction, defendant William E. Neal signed and delivered the notes, together with the mortgage, as part of the purchase price of the real estate. A supplemental answer was filed by defendants Neal, in which they contended that, at the time of the execution of the real-estate contract, it was agreed that defendants Neal would not be liable on the endorsements of the notes.

In a cross-complaint, defendants Neal claimed that they were entitled to recover an attorney's fee because of the fact that the real-estate contract provided therefor in case suit or action thereon was decided against plaintiff.

The reply put in issue the allegations made by defendants Neal.

The cause was tried to the court sitting without a jury. After trial, the court made findings of fact and conclusions

of law and, based thereon, entered its judgment in favor of defendants Neal, and allowed them attorney's fees in the sum of fifty dollars.

Plaintiff appealed from the judgment, and defendants Neal have cross-appealed.

We shall, in this opinion, refer to plaintiff Aisted as appellant, and to defendants Neal as respondent.

Appellant's assignments of error call in question the following findings of the trial court: (1) That no notice of dishonor was given to respondent in reference to the nonpayment of the installments on the promissory note for sixty-five hundred dollars; (2) that the real-estate contract provided for a reasonable attorney's fee and that respondent is entitled to an allowance therefor in the sum of fifty dollars. Additional assignments of error are that the court erred: (1) in refusing to grant judgment against respondent; (2) in denying appellant's motion for reconsideration; and (3) in refusing to make and enter a finding of fact as to the date upon which appellant matured the last four installments of the sixty-four hundred dollar note.

Respondent's assignments of error question the amount allowed to him as attorney's fees.

The facts may be summarized as follows: On or about December 18, 1946, respondent sold the vessel "Irisswed" to defendants Grim for the sum of ten thousand dollars, receiving therefor cash and two promissory notes both dated December 18, 1946. One note was for twenty-two hundred fifty dollars. The other note for sixty-five hundred dollars was payable in five annual installments of thirteen hundred dollars or more. The first payment was to have been made on the 1st day of September, 1947, and a like amount on the first day of each year thereafter, until the total amount was paid. The note further provided that if any installment was not so paid the whole sum of both principal and interest should become immediately due and collectible at the option of the holder of the note.

On or about February 15, 1947, appellant and respondent entered into a contract by the terms of which respondent

purchased from appellant real estate and certain equipment thereon, and made as part payment the two notes signed by the Grims. On the back of each note there was written "pay to the order of George M. Aisted," and then respondent signed his name "William E. Neal." All of the acts of transfer took place prior to the due dates of the notes.

October 7, 1947, appellant's attorneys, Velikanje & Velikanje of Yakima, Washington, mailed a letter to respondent William E. Neal. The letter stated that one of the attorneys had been in Seattle, had a conference with defendant Harold Grim and his attorney, and it was there agreed that Grim was going to attempt to sell the boat and get sufficient funds out of the sale to pay the notes. It was then stated that the attorneys had given him until the 16th day of October to make definite arrangements, and if nothing was done by that time, there would be no other alternative but to "go ahead on the foreclosure."

October 16, 1947, appellant's Yakima attorneys forwarded the notes and other papers in the case to the law firm of Jones & Bronson of Seattle with instructions to institute action and make William Neal a party defendant. On the following day they wrote a letter to the law firm of Bogle, Bogle & Gates, Seattle, who were attorneys for respondent. This letter recited the fact that they had mailed the notes and other papers connected with the case to Jones & Bronson, with instructions to begin an action against Grim and respondent. Thereafter, summons and complaint were filed with the clerk of the court on October 21, 1947. Respondent, who resides in Kittitas county, was the first party served with process, the date of service being November 24, 1947. Defendant Harold A. Grim was served with copy of summons and complaint February 13, 1948.

Appellant failed to make personal presentment of the promissory notes or give notice of dishonor to respondent. Appellant, in his brief, admits that the failure to make presentment and give notice of dishonor relative to the note for twenty-two hundred fifty dollars has released the endorser from liability on that instrument. The same situation re-

lates to the first installment on the sixty-five hundred dollar note, which payment fell due September 1, 1947. We have only to consider the payments which were to become due in 1948, 1949, 1950, and 1951.

Prior to the trial, the marine mortgage securing the notes was foreclosed in Federal court. This resulted in a credit of $3,421.50 on the larger note.

Appellant attempted to accelerate the payments on the larger note. Counsel state that "matters of presentment and notice of dishonor hinge on" the date the acceleration was accomplished. They contend that this was brought about by the letter of October 17, 1947, directed to the attorneys for respondent, wherein they were advised that the notes had not been paid and that action was about to be instituted to foreclose the mortgage on the boat. We are unable to agree with this contention.

Questions of the nature presented here are governed entirely by our negotiable instruments act.

Rem. Rev. Stat., § 3457 [P.P.C. § 759-13] provides:

"Every indorser who indorses without qualification, warrants to all subsequent holders in due course—

". . . he engages that on due presentment, it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored, and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder, or to any subsequent indorser who may be compelled to pay it."

Rem. Rev. Stat., § 3461 [P.P.C. § 761-1] states that presentment for payment is necessary in order to charge the endorsers on a note.

Rem. Rev. Stat., § 3462 [P.P.C. § 761-3] provides that, where the instrument is not payable on demand presentment must be made on the day it falls due.

Rem. Rev. Stat., §§ 3463 and 3464 [P.P.C. § 761-5, -7] indicate the time and place where presentment must be made.

Rem. Rev. Stat., § 3465 [P.P.C. § 761-9] reads:

"The instrument must be exhibited to the person from whom payment is demanded, and when it is paid must be delivered up to the party paying it."

Rem. Rev. Stat., § 3475 [P.P.C. § 761-29] provides:

"Subject to the provisions of this act, when the instrument is dishonored by nonpayment, an immediate right of recourse to all parties secondarily liable thereon accrues to the holder."

Rem. Rev. Stat., § 3479 [P.P.C. § 756-1] reads:

"Except as herein otherwise provided, when a negotiable instrument has been dishonored by nonacceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

It will be noted that there is no portion of the statute which allows presentment to be made to the attorneys representing the endorser.

Under Rem. Rev. Stat., § 3457, the first endorser does not unconditionally engage to pay the instrument. He only agrees to pay it if it be dishonored and the necessary proceedings on dishonor be taken. Under this section, and Rem. Rev. Stat., § 3479 making notice of dishonor necessary to charge endorsers, the holder of a negotiable instrument, in order to hold the first endorser, must present the instrument to the maker or acceptor, and if he refuses payment, give the endorser immediate notice of dishonor. *Legal Discount Corp. v. Martin Hardware Co.*, 199 Wash. 476, 91 P. (2d) 1010, 129 A. L. R. 420. Accord: *Galbraith v. Shepard*, 43 Wash. 698, 86 Pac. 1113; *Bardshar v. Chaffee*, 90 Wash. 404, 156 Pac. 388; *Anderson v. Sperry*, 155 Wash. 300, 284 Pac. 102.

Appellant cites cases to uphold his contention that he was excused from presenting the note to the Grims and notice of dishonor to respondent because of the fact that the whereabouts of the Grims was unknown. True, appellant's attorneys were told by counsel for Grims that they would not reveal their clients' whereabouts. Appellant's contention

fails, however, because of the fact that he did not make an attempt to locate the Grims at the place where payment was to be made as specified in the note, nor at their usual place of business or residence.

The sixty-five hundred dollar note stated: "Due September 1, 1951 At Renton, Wash." The assignment of the ship's mortgage in which the two notes were set out in full was dated February 15, 1947. The mortgage was of record in the office of the collector of customs in the city of Seattle. There was attached to the assignment from respondent to appellant a copy of the ship's mortgage which showed in its body an acknowledgment that the Grims were both "of the city of Bellevue, in the State of Washington." A letter, dated January 17, 1947, written by E. F. Velikanje, who represented appellant when a sale of the land was consummated, and directed to Robert E. Landweer, custom house broker who handled the transfer of the preferred ship's mortgage, stated:

"Mr. Neal is assigning the notes and mortgage to George M. Aisted, and we wish you would prepare for us the necessary papers to complete this assignment. We understand that it is necessary to have the Ship's papers, and these can be obtained from the Grims as they are living on the boat, which is moored at Markley's Boat Moorage, 2408 Westlake North."

It was the duty of the appellant in the first instance to attempt to present the note at the place where it was due, at Renton, Washington. In the second place, he had very definite knowledge that Grims had lived at Bellevue and his attorney had knowledge that the Grims lived at 2408 Westlake North, in Seattle. Appellant did not make any effort to locate the Grims at the places mentioned for the purpose of presenting them with the note and a demand for payment. Having failed to comply with the statutes to which we have referred, appellant cannot recover from respondent as endorser of the note.

Appellant and respondent each assign error of the court concerning the allowance of an attorney's fee of fifty dollars

to respondent.  These contentions spring from a provision in the real-estate contract which reads:

"It is further agreed and understood that in any suit or action involving this contract, arising out of any liability of either party to the other hereunder, that the prevailing party shall recover from the unsuccessful party in such litigation such sum as the court shall adjudge reasonable as attorney's fee in such suit or action."

Appellant ·contends that no attorney's fee should have been allowed.  Respondent takes the position that the allowance of an attorney's fee was proper, but that the amount allowed was inadequate.  Respondent attempted to bring the real-estate contract into the case by claiming that the transfer of the notes and the assignment of the mortgage were so closely allied that the respondent simply transferred the notes without liability.  There is no real connection between this litigation and the transaction involving the sale of the real estate.  That being so, it must be determined that the allowance of an attorney's fee was improper.

The judgment of the trial court, as modified by this opinion, will be affirmed.

SCHWELLENBACH, HILL, GRADY, and DONWORTH, JJ., concur.