## Allied Building Credits, Inc., v. Miller

*T. C. Cochran, Sr.* and *T. C. Cochran, Jr.*, for plaintiffs.

*John V. Wherry*, for defendants.

RODGERS, P. J., March 6, 1956.—This matter comes before the court on the petition of Glenn A. Miller and Goldine V. Miller, his wife, defendants, moving this court to open a judgment entered against them by a confession by the Allied Building Credits, Inc., plaintiffs. Plaintiff is a finance company engaged in the business of financing construction projects.

On April 11, 1951, defendants executed a contract with the Erie Siding and Roofing Company of Erie, under which that builder contracted to repair the roof and do other work on defendants' home. The builders proceeded to do the work and on November 6, 1951, defendants executed an FHA title 1 completion certificate addressed to plaintiff indicating that an application for credit had been made to plaintiff on June 22, 1951, and that the work in question had been satisfactorily completed.

The note in question was signed on November 6, 1951, by Glenn A. Miller and Goldine V. Miller, payable to the Erie Siding and Roofing Company. This note carried on its back the following printed endorsement: "Without recourse pay to the order of Allied Building Credits, Inc.", followed by the printed lines above which was the signature of the Erie Siding and Roofing Company.

The application for a loan, the note and the completion certificate executed by defendants were prepared and furnished by plaintiff.

In their petition defendants alleged a failure of consideration.

In its answer to the amended petition to open the judgment, plaintiff relies on two grounds. First, that it is holder in due course of the instrument in question and that, therefore, no defense for failure of considera-

tion is available to defendants, and secondly, that plaintiff was induced to make the loan in question by a completion certificate wherein defendants certified that "all the article and materials have been furnished and installed and the work satisfactorily completed on the premises indicated in our credit application."

Is plaintiff, Allied Building Credits, Inc., a holder in due course of this note? While there is considerable respectable authority contra, (Commercial Credit Corporation v. Orange County Machine Works, 34 Cal. 2d 766; 214 P. 2d 819; Mutual Finance Company v. Martin, 63 So. 2d 649 (Florida 1953); Commercial Credit Corporation v. Childs 199 Ark. 1073, 137 S. W. 2d 260; 53 Harvard Law Review 1200; 29 N. Y. University Law Review 624) our Superior Court has held that the mere printing and furnishing of the necessary forms by a finance company to the dealer-seller for use in the ordinary dealer-purchaser-lender transaction will not destroy a lender's position as a holder in due course: International Finance Co. v. Magilansky, 105 Pa. Superior Ct. 309.

In this case, however, we believe that lender plaintiff went beyond this. Defendants claim that they didn't realize that they were making application to Allied Building Credits, Inc., and a minimal knowledge of human nature would indicate that this could be perfectly possible where the ordinary citizen becomes involved in such a transaction. Certainly, however, plaintiff was not confused about the matter and plaintiff's counsel was perfectly clear on this point.

Plaintiff's exhibit A was the FHA title 1 completion certificate forwarded by plaintiff, signed by defendants and addressed to plaintiff. It was admitted in evidence over the objection of defendants after plaintiff's counsel said: "I desire to read it into the record because perhaps it is the most important paper we have. *The exhibit is to show that the Defendants made applica-*

*tion to the Plaintiff for credit and that it resulted in the giving of the note in suit."*

This statement is certainly the clearest possible proof that plaintiff was a part of this transaction prior to the signing of the note by defendants, payable to the builder, that in fact the application for credit was actually directed to plaintiff and that the present plaintiff was in effect acting as a credit manager of the builder in this case.

Certainly this makes plaintiff an original party to this transaction and not a holder in due course. This was the holding of the Court of Civil Appeals (Texas 1953) where that court said of a similar practice:

"The real question for determination under the facts in this case is: can a purchaser for value of a note, negotiable on its face, be a holder in due course, *if he requires the payee of the note to secure the execution of an additional instrument by the maker, as a condition precedent to his purchase of the note?* . . . Here, appellant finance company is in the business of purchasing appliance notes from dealers and installation people. As a *condition precedent* to its purchase of the note, it required the payee of the note to secure the execution of an additional instrument by the maker, certifying that the *material for which the note was given had been delivered and installed and all work fully completed.* Appellant furnished the form for this additional instrument. Appellant was not content to stand on the note itself as a negotiable instrument, but required that the additional instrument be executed by the maker of the note. It was upon the faith and strength of this additional instrument, and not upon the note, that the note was purchased. . . . Appellant finance company, who purchased the note, and *claims* to be a holder in due course, while not an original party to the note, not only *had knowledge* of the additional instrument, but actually *caused it to*

*be executed.* Appellant by its course of action becomes an *original party to the additional instrument;* and forfeits what might otherwise have been its status as a holder in due course": Allied Building Credits, Inc. v. Ellis, 258 S. W. 2d 165 (Texas 1953).

In volume 29 N. Y. University Law Review at page 624, that publication discussed the subject of a finance company as a holder in due course and said:

"A noticeable trend in judicial decision over the past 10 years is evidenced by a growing minority rule under which a finance company is denied the status of a holder in due course so as to let in defenses such as breach of warranty, failure of consideration, or fraud in the inducement, in conditional sale installment purchases of commodities from dealers. The basis of the rule is that where the finance company is so closely connected with the transaction out of which the note it purchases arose, counseling and aiding the dealer-payee, it is practically a party to the agreement, and cannot be regarded as a purchaser in good faith of the instrument on which it seeks recovery. It is said to be, in effect, in charge of credit management of the dealer's business and accounts, and thus an integral part of his business. It is therefore outside the category of good faith purchasers of negotiable instruments."

In the instant case plaintiff went even further. The application for credit and the completion certificate were both directed to plaintiff rather than to an intermediate party. These facts clearly indicate to this court the interest and participation of plaintiff as an original party to this transaction rather than as a holder in due course of the instrument in question.

Holding as we do that plaintiff is not a holder in due course, it follows that plaintiff is bound by any defenses which defendants had as to the Erie Siding and Roofing Company. Two questions, therefore, re-

main. First, was there a failure of consideration and secondly, have defendants by executing the completion certificate estopped themselves from raising a defense of failure of consideration against the present plaintiff?

It seems clear that on the evidence, defendants have proved a failure of consideration. The question remains, then, as to what extent defendants' mouths are closed by the completion certificate which they addressed to plaintiff and on which the plaintiff relied in making the loan.

Plaintiff here was aware that the loan he was making was a construction loan and that the money advanced would be used to meet defendants' obligation on a construction contract.

One of the risks involved in handling construction paper as an original party is the possibility that there may be latent defects in the work done not apparent at the time the completion certificate is executed.

Both the builder and the lender, we believe, are bound to know that there may be such latent defects in the work for which the homeowner defendant would have a cause of action, and since plaintiff is in as good a position as anyone else to realize this possibility, we believe that under the circumstances of this case, a completion certificate could be of no more value to plaintiff than to the builder himself.

The loan business is a perfectly legitimate enterprise but where the lender becomes engaged in the original transaction, as he has here, he must be prepared to assume the legitimate risks involved.

In the present case, at least a portion of the claim made for work unsatisfactorily done concerns work the actual condition of which could not be determined at the time of the execution of the completion certificate.

We do not believe that the law intends to bind a

party to the acceptance of latent defects in the work performed by a completion certificate required in the ordinary course of a financial transaction.

This leads us to the conclusion that the execution of the completion certificate addressed to plaintiff cannot protect plaintiff with reference to latent defects which became apparent after the execution of the certificate, but that it does protect the lender-plaintiff from deficiencies in the contract which were apparent at the time of the execution of the certificate.

Since we are dealing with an original party to the transaction rather than with a holder in due course, the question of the right to open a judgment is controlled by the same rules which would apply in an ordinary confession of judgment or default judgment case. In Mellon Bank v. Brautigam at 689 June term, 1953, this court discussed this general problem and said:

"Is this the type of case then in which the purchaser is bound to pay under a confession of judgment clause or does justice demand that the defendant be granted a day in court to present his case to a jury of his peers?

"In default judgment cases the courts have said:

" 'To have a judgment opened that has been taken by default, there must be sufficient reasons to move the conscience of the judge who sits as chancellor and convince him that an injustice has been done'. Rothkugel v. Smith, 70 Pa. Superior Ct. 590, 591.

"It has also been said, however, that: 'Courts are not required to open judgment merely because a defendant produces evidence which, if true, would constitute a defense'. Berkowitz v. Kass, 351 Pa. 263.

"Chief Justice Stern in Schuylkill Trust Company v. Sobolewski, 325 Pa. 422, discussed this problem and quoted with approval a statement in Earley's Appeal, 90 Pa. 321, as follows:

" 'It is difficult to lay down the precise measure of proof which should move a chancellor to open a judgment. That he may not act unless there is more than an oath against oath, is a familiar rule in chancery practice. When there is more than this, and it comes to a question of the weight of the evidence, it is for him to decide to which side the scales incline. If he is in doubt upon this question, or as to the credibility of witnesses, a prudent course would suggest the aid of a jury. Subject to the foregoing, it is proper to say, that if the testimony taken on the rule would be sufficient to justify the submission of the question to a jury, the court may, in its discretion, make an order to open; but if, on the testimony, so taken, the·court would set aside a verdict for the defendant, the court should refuse to open. This rule provides a reasonable margin for the exercise of the discretion of the court below, which this court will hesitate to interfere with'.

"In Quaker City C & C Company v. Warnock, 347 Pa. 186, 190:

" 'Petitions to open judgments by default are addressed to the trial court's sound discretion and are essentially equitable proceedings ruled by equitable principals.'

"Here we have a judgment entered by confession as a part of a security transaction and it is, we believe, the type of case in which a court sitting as a chancellor should perhaps be a little more ready to act to permit a defendant to be heard on the merits of his case."

We believe that this is such a case.

### Order

And now, March 6, 1956, the rule issued upon Allied Building Credits, Inc., to show cause why the judgment entered at 45 January term, 1954, E. D. should not be opened and defendants allowed to defend the same, is made absolute.

*Exception*

And now, March 6, 1956, to the foregoing order of court, counsel for plaintiff excepts and, eo die, a bill of exceptions is sealed for plaintiff.