United States National Bank, Appellant, *v.*
Evans, Administratrix.

542

Argued March 22, 1929. Before MOSCHZISKER, C. J.,
FRAZER, WALLING, SIMPSON, KEPHART, SADLER and
SCHAFFER, JJ.

543

*Harry Doerr,* with him *Philip N. Shettig,* for appellant.—It is no defense to a note for the maker to show that when it was executed and delivered there was an understanding different than that indicated by the terms of the writing itself, in the absence of proof that the signature to the note was secured by fraud, accident or mistake, or induced by a promise that the note should not be used, and, but for which promise, the note would not have been signed: Phillips v. Meily, 106 Pa. 536; Ziegler v. McFarland, 147 Pa. 607; Jackson v. Payne, 114 Pa. 67.

The testimony of a single witness unsupported by corroborating circumstances is insufficient to vary the terms of a written contract: Jones v. Backus, 114 Pa. 120; Sylvius v. Kosek, 117 Pa. 67; English's App., 119 Pa. 533; Mifflin Co. Nat. Bank v. Thompson, 144 Pa. 393; Pioso v. Bitzer, 209 Pa. 503; Fuller v. Law, 207 Pa. 101; Dorris v. Coal Co., 215 Pa. 638; Thomas & Sons v. Loose, 114 Pa. 35.

In the case of Gandy v. Weckerly, 220 Pa. 285, the decision stresses the point that the parol understanding had at the time of signing the agreement must have constituted the inducement which led the party to sign, and

that when such parol inducement exists, evidence thereof is permitted to vary the terms of the writing. This case is contrasted with the other decisions hereinabove recited for the reason that its facts placed it within the exception to the parol evidence rule.

*F. J. Hartman,* with him *Charles S. Evans,* for appellee.—The circumstances under which plaintiff acquired the note in question, being aware of the conditions and agreements made at the time of the signing thereof by Harvey Evans, as well as the time when it was acquired by it, are material facts and should be considered: Cullmans v. Lindsay, 18 W. N. C. 509; Cake v. Bank, 116 Pa. 264; Martz v. Wilcox Co., 57 Pa. Superior Ct. 169; Potter v. Grimm, 248 Pa. 440.

It is our contention that the agreement made at the time of the execution of the note in suit that it would be used as collateral, and appellant being aware of this agreement and promise, cannot now be permitted to repudiate the agreement and understanding because it induced the maker of the note to execute it: Kerr v. Mc-Clure, 266 Pa. 103; Malone v. Grocery Co., 65 Pa. Superior Ct. 586; Faux v. Fitler, 223 Pa. 568; Federal Sales Co. v. Farrell, 264 Pa. 149; Greenawalt v. Kohne, 85 Pa. 369; Bown v. Morange, 108 Pa. 69; Gandy v. Weckerly, 220 Pa. 285.

OPINION BY MR. JUSTICE SADLER, April 15, 1929:

A corporation, known as the Johnstown Terminal Warehouse Company, was formed, and a large number of individuals purchased stock; in many cases paying by notes. The corporation also placed upon the property a mortgage of $300,000. Many of the subscribers failed to comply with their obligations, and the funds received were insufficient to complete the construction of the proposed building. After efforts had been made to collect from those owing, it was found that a large part of the obligations given could not be realized upon, and that, at

the most, the makers of $60,000 could be successfully forced to respond. In order that the building might be finished, and the investment already made conserved, the directors of the warehouse company met on September 22, 1924, and considered the feasibility of giving the corporation's note to one of the Johnstown banks for the amount required, to insure payment of the building contractors, upon which the directors of the warehouse company should become individually liable as endorsers.

After considering the situation, it was determined to increase the indebtedness of the company by creating a second mortgage, thus increasing the bonded indebtedness to $550,000. It was further resolved that the directors should assume personal liability by executing individual notes, in proportion to the amount of their respective interests, aggregating $62,000, to be delivered to the bank, which would extend credit and insure the builders of payment, if they proceeded with the work. It was further agreed that, in case the makers were subsequently compelled to comply with their obligations, the company would reimburse them with monies collected from defaulting subscribers for stock; or, if no such fund materialized, to issue stock or second mortgage bonds to an amount equal to the sums they were compelled to pay. One of the directors of the warehouse company, Ott, was also a director of the United States National Bank of Johnstown, which agreed to discount the individual paper of the directors, executed as a result of this plan of refinancing. Evans, now deceased, and whose administratrix is defendant in the present proceeding, signed a note for $5,000, the proportion of liability which he agreed to assume. It was dated September 22, 1924, and, though delivered, was not actually discounted until later, when payments to the contractor became due. The interest thereafter accruing was advanced by the warehouse company, but the individual obligation remained unpaid at the time of his

death, and it was to recover the amount thereof that this action of assumpsit was brought.

The defense offered at the trial was based on an alleged contemporaneous parol agreement, made at the time of the giving of the note, that Evans should not be held liable upon his obligation, but that the same should be paid by the warehouse company. The resolution, already referred to, provided that if the individual makers, including Evans, were compelled to pay they should be reimbursed in the manner already noted. The court below submitted to the jury the question as to whether or not the note was an individual obligation of Evans, or was merely signed under an agreement that it should be held as collateral for a note of the warehouse company, and that the latter would provide for its satisfaction.

Ott was a director of the warehouse company and also of the bank, and was present when the resolution of the former corporation was adopted, thus acquiring knowledge of what had occurred. He had a conversation with the president of the plaintiff institution explaining the plan of paying the building contractor determined on, and the method to be followed to secure the necessary credits. No evidence was offered to show that the bank promised to relieve from individual responsibility any of the makers of the notes agreed to be discounted; on the contrary, it was testified by Martin, the cashier, that he saw the demand note signed by Evans, took it into his possession, and finally accepted it as his personal obligation, receiving it "on the full strength that Harvey Evans would pay it." This statement is corroborated by the testimony of Davies, Kinzey, Ott, Williams and Harding, all of the other witnesses examined at the trial, except the administratrix, who was merely called to show that she knew nothing of the note until after the death of her husband, and had paid no interest thereon.

Neither of the executive officers of the bank mentioned would have the right to nullify the paper given and accepted as the individual note of Evans, unless the

directors of the bank had so agreed. The knowledge of a single director, Ott, acquired in another transaction, would be insufficient to bind it to any such agreement, even if made. "Notice to a director is not notice to the corporation, unless he be constituted an organ of communication between it and those who deal with it [1 Savidge on Corp., 668, and it] is not bound by the knowledge of one of its officers or agents derived from outside sources and not in connection with the exercise of the authority conferred by the corporation" : 1 Savidge on Corp., 669. Particularly is this true where Ott was a party personally interested. "The great weight of authority supports the view that knowledge of a bank director is not chargeable to his bank with respect to discounts and other matters in which he is interested, for the presumption is that he will not communicate them, since his purpose would be best served by maintaining silence; and the same rule has been considered applicable where a director of a bank is also an officer or director of a company dealing with the bank" : 7 C. J. 537.

To show that the bank looked solely to the warehouse company for payment, and not to the individual makers, defendant rests on a statement made by Harding, who was present at the meeting of the corporation when the arrangements for personal obligations were made, and who testified that the parties were "asked to sign these notes, and they were practically assured, from the fact that this money was to be collected from the notes for unpaid stock subscriptions, that they would not have to pay the note finally, but as the money was paid in by debtors the notes would be paid off and returned to them. In other words, they were to furnish individual notes to be used as collateral to one note of the Johnstown Terminal Warehouse Company for the raising of the $60,000 that had been arranged with some institution." No obligation of the amount mentioned was ever given by the warehouse company, nor was any money ever advanced or paid to cover the individual notes

which had been taken by the bank and discounted. Asked, "As far as they were concerned [the signers of the notes], were they binding themselves individually to pay the note?" he answered, "It was an individual note." He further explained that a joint endorsement to cover the entire credit desired was not executed by all interested as first proposed, because each maker desired to assume a definite and limited part of the amount to be borrowed. Upon this testimony of Harding, as to limitation of liability, if such can be fairly implied from the statement made, contradicted as it was by all the others mentioned, the jury was permitted to find that the Evans promise to pay was merely given as collateral for a warehouse note, though, in fact, none was ever given by the corporation, and that it was by reason of the promise that he should not be responsible that he was induced to sign. The jury found in favor of the defendant and motion for judgment n. o. v. was refused.

The proceeds of the note were credited to the warehouse company, as requested by the maker, but it was Evans, and not the bank, that was the accommodated party, and the latter gave value for the instrument. Evans therefore became liable, though he did not personally receive any cash or credit therefor: Bank of Hooversville v. Sagerson, 283 Pa. 406; First Nat. Bank of Greencastle v. Baer, 277 Pa. 184. "An accommodation party is one who signed the instrument as maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be an accommodation party": Act May 16, 1901, P. L. 194, 199, section 29. It will be remembered that the suit is not brought here by the one who supposedly made the inducing promise, which was the warehouse company, but by the bank which duly discounted and paid out as directed. Decisions cited, of which Faux v. Fit-

ler, 223 Pa. 568, is an instance, do not, therefore, control.

The court below proceeded on the theory that parol evidence was admissible to show the obligation was merely collateral to the warehouse company note, which was at no time executed or delivered, and that Evans assumed no personal liability. It based its legal conclusion on the authorities of which Gandy v. Weckerly, 220 Pa. 285; Noel v. Kessler, 252 Pa. 244, and Croyle v. Cambria Land & Improvement Co., 233 Pa. 310, are illustrations. The rule there recognized is that where a person is induced by a contemporaneous parol promise to assume personal liability, which he would not have done except for the understanding, a subsequent breach of the agreement is a fraud upon his rights. In such case, he may set up the default as a defense, and prove the inducing promise by oral testimony. It is clear, however, in the present case, from the testimony of the witnesses, including Harding, though he expected that back payments due by stockholders would raise sufficient funds to pay for the additional construction, that there was no understanding by the bank that Evans, or any of the other accommodation makers, should be relieved from individual liability, which clearly appeared on the face of the note. It was not discounted under a contract that the warehouse company should alone be looked to for payment. If the obligation had been delivered upon condition, and induced by the promise as claimed by appellee, such a defense would still be available as against the payee (20 A. L. R. 442), as the provisions of the Negotiable Instruments Act do not alter the rule enunciated, since it is a mere codification of the general law upon the subject: Storey v. Storey, 214 Fed. 973. The Pennsylvania authorities, dealing with defenses such as here asserted, are fully collated in a note to 20 A. L. R. 483, to which reference is made.

In the instant case, we have an unconditional promise to pay, discounted in the regular way by a bank for an

accommodation maker, and no adequate proof to show the obligation was in reality that of the warehouse company, or given merely as collateral, so as to bring the case within the authorities mentioned in the preceding paragraph, and so understood by the board of directors of the plaintiff when it was accepted. If the integrity of the written instrument (Gianni v. Russell & Co., 281 Pa. 320) is not to be upheld, it is ordinarily necessary that some legal fraud, accident or mistake be established, but we have no evidence in the present case to bring it within a recognized exception. What was said in Bank of Hooversville v. Sagerson, supra, page 411, 412; Evans v. Edelstein, 276 Pa. 516, and First Nat. Bank of Greencastle v. Baer, supra, applies here. The testimony on behalf of appellee was to show that the written instrument was a nullity, which is inadmissible under our authorities. A different rule would be applied had the facts come within the principle set forth in Gandy v. Weckerly, supra, and similar decisions, or if there had been an averment and proof that the obligation was to be paid from an actually existing fund (Second Nat. Bank of Reading v. Yeager, 268 Pa. 167), but, in the present case, there was no such situation, though there remained in the hands of the directors of the warehouse company notes of stockholders, as to some of which there was a possibiilty of collection. The evidence shows their hopes in this regard were disappointed.

A breach of faith, or of an agreement, regarding the doing or refraining from doing something in the future is no fraud of the kind that will admit of parol testimony to vary its terms, and it is no defense that the defendants signed their names to the obligation for the unconditional payment of money with the understanding that there will in no event be any liability on their part to pay: Fidelity T. & T. Co. v. Garland, 291 Pa. 297. Thus, a promise that the note should be paid from dividends which might accrue is no defense (Fuller v. Law, 207 Pa. 101), or from the proceeds of buildings which

were to be erected: Homewood People's Bank v. Heckert, 207 Pa. 231. Nor was there any adequate proof of a contemporaneous parol agreement with the present plaintiff bank (Pioso v. Bitzer, 209 Pa. 503; Jackson v. Payne, 114 Pa. 67) inducing the signing, or of any fraud, accident or mistake, which would justify the nullification of the written instrument. It does not appear that there was any attempt to make a fraudulent use of the note in violation of any promise or agreement made at the time the instrument was signed and delivered, as in Federal Sales Co. v. Farrell, 264 Pa. 149; Phillips v. Meily, 106 Pa. 536.

Under the circumstances disclosed by the record, the question of liability of the Evans Estate was not one for the jury, and binding instructions for the plaintiff should have been granted. The 5th and 6th assignments of error are sustained, and, in view of this, the others need not be separately considered.

The judgment is reversed and is here directed to be entered for the plaintiff for the full amount of its claim with interest.

CONCURRING OPINION BY MR. JUSTICE SCHAFFER:

I am in full accord with the result reached in this case, but I do not agree with what is said as to the rule laid down in Gandy v. Weckerly, 220 Pa. 285, and cases which followed it. In my view, the rule there announced is in conflict with that established by our later cases, such as Bank of Hooversville v. Sagerson, 283 Pa. 406; Evans v. Edelstein, 276 Pa. 516; First Nat. Bank of Greencastle v. Baer, 277 Pa. 184; Fidelity Title & Trust Co. v. Garland, 291 Pa. 297.