## Myers v. Rubin, Appellant.

Argued November 16, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Philip M. Hammett,* with him *Schnader, Harrison, Segal & Lewis,* for appellants.

*Herbert Fineman,* with him *Fineman & Fineman,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, May 4, 1960:

Murray I. Myers and the Wynnebrook Bus Lines, Inc., of which he is the president, brought an action in equity against Albert Rubin, Jack Rubin, Rebecca Rubin and Louis Rubin, trading as the Rubin Lines, now the County Transit Company of Glenside, to rescind a written contract wherein the plaintiffs agreed to buy their bus line. The bus line was a private business operating under the authority of the Public Utility Commission and consisted of transporting school children to and from their homes and Overbrook High School, Beeber Junior High School and Gompers Elementary School, all in the Overbrook section of the City of Philadelphia.

In their complaint the plaintiffs alleged that the defendants made untruthful statements about their

business and that these statements were the induce-
ments which caused the plaintiffs to agree to purchase
the defendants' business.  The chancellor found for the
plaintiffs.  The defendants appealed.

Briefly, the facts as found by the chancellor and
supported by the record, are as follows.  In April, 1957,
the defendants, through an authorized agent, repre-
sented to the plaintiffs that the defendants were trans-
porting 1110 student fares per day at the rate of 15
cents per fare. This representation was repeated by the
defendants to the plaintiffs in the month of June, 1957.
The statements did not coincide with the defendants'
own books which showed a collection of only 800 total
fares during each of the months of April, May, and
June, 1957.  As late as October, 1957, the month be-
fore the sale was consummated, the defendants were
deceiving the plaintiffs on the subject of fares collect-
ed.  Nor were the misstatements in question the result
of ignorance or inadvertence.  One of the defendants,
Albert Rubin, was bookkeeper of the bus company and,
therefore, had direct knowledge of the amount of busi-
ness being done by his firm.

During the period of negotiations between plain-
tiffs and defendants, the Public Utility Commission
granted the defendants an increase in the fare rate.
The defendants stated to the plaintiffs that this in-
crease did not in any way reduce the volume of busi-
ness done by them.  The facts were proved to be other-
wise.

The whole business structure of the country could
be imperiled if the parties could supply deceptive
foundations which could not be condemned and re-
moved once the superstructure went into place.  The
record here reveals numerous failings on the part of
the defendants.  They not only misstated the total
number of fares carried by them, but they were not
forthright about the condition of their buses which

were in such a state of disrepair that the plaintiffs were compelled to purchase three secondhand buses in order to conduct the business into which they had been led through artifice and dissimulation.

The defendants contend that rescission of the contract must fail because parol testimony may not be accepted to alter, vary, or contradict a written contract. However, it is established law that misrepresentation of a material fact, if relied upon by the deceived party, inducing him to enter into the contract, confers upon that party the right to nullify the agreement when the falsity of the representation is discovered. (*LaCourse v. Kiesel,* 366 Pa. 385.)

There is a monumental distinction between a representation on a contractual item to be included in the written agreement and a representation made on something unconnected with the written agreement but constituting an inducement to the agreement. In the case at bar the defendants cited statistics which were not to be incorporated into, nor in any way made part of, the agreement so that the parol evidence heard by the chancellor on the subject was not an attack intended to alter or modify a contract. It was evidence aimed at striking down the contract itself because induced by fraud. Fraud is a deadly acid which kills or cripples whatever it touches.

An argument similar to the one advanced by the defendants was considered and passed upon by this Court in the case of *Feuerstein v. N. Ce. Realty Co.,* 304 Pa. 271. There we held that a written lease dealing with engagements and assumptions as to the future would be set aside upon proof that the lease came into being as the result of a false statement that a mortgage on the leased premises had been extended: "The representation that the mortgage had been extended was not a promise to do something in the future but stated a thing already accomplished. This

statement was untrue when made, for the time of payment had not been extended. It was a misrepresentation of a material fact on the faith of which appellee relied . . . It is always competent to aver and prove that an engagement in writing was induced by fraudulent oral representations of material facts that affect the consideration. The purpose in such case is not to alter or vary the terms of the writing by parol evidence but to strike the writing down, just as though it had never been in existence . . . Failure of consideration entitles one to relief in equity, in whole or in part, from his written obligation: Cridge's Est., 289 Pa. 331, 337."

Then, the defendants contend that even at the worst, the representations made by them were only as to future events and that such false promises as to profits to be enjoyed, if made, could not support rescission of a contract. In that respect, the defendants cite *Palone v. Moschetta*, 387 Pa. 386, but that case merely stands for the rule, which has long been the law (*Hein v. Fetzer*, 301 Pa. 403) that ". . . a mere breach of good faith, or a broken promise to do or refrain from doing something in the future, . . . is not accounted 'fraud of the kind that will admit parol testimony to vary the terms of a written contract' . . .". This case, however, as already shown, falls within the rule that a material misrepresentation inducing plaintiffs to enter into a contract can afford a ground for rescission of the contract upon discovery of the misrepresentation.

We affirm the decision of the court below in allowing rescission of the contract of sale, but we do not believe that the record entitles the plaintiffs to recover on alleged loss of profits. Under the evidence presented, the plaintiffs' failure to achieve the profits they anticipated could be attributed to causes other than the defendants' misrepresentations as to the number of

fares the buses would carry daily. Therefore, we do not deem it necessary to interpret section 2-721 of the Uniform Commercial Code relied upon by the court below in granting plaintiffs $9137.70 for loss of profits.

However, the court below properly held plaintiffs entitled to the $1500 cost of the new buses they were required to purchase because the buses supplied by defendants were not in usable condition as represented. As plaintiffs are entitled to a rescission of their contract of purchase of the bus lines from the defendants, they are entitled to restoration of the status quo and can recover the amounts thus expended by them for the new buses. As held in *Ohio Valley Tr. Co. v. Allison*, 243 Pa. 201 at 204 and 206, plaintiffs, upon rescission of their contract of purchase are entitled to recover for expenditures made by them in reliance on the contract. This Court there stated: "The first assignment of error is to the admission of evidence as to the cost of removing plaintiff's goods from the premises. Appellants deny that this was a proper element of damages. The claim is merely for the expense incurred in moving the goods. Plaintiff made no profit out of the transaction. The amount was only that required to make it whole, and if the expenditure was incurred through the fault of the defendants, it was properly allowed."

. . .

"We do not see that defendants have any just cause of complaint at the manner in which this case was tried, or at the result. Appellants have their property again, and are required to repay to the plaintiff only the money which they actually received on account of the purchase, and the additional amounts expended by plaintiff for necessary repairs, and for the cost of removing the goods from the premises, and in the payment of one year's taxes."

Upon payment of the amounts thus expended by plaintiffs for the new buses, defendants are, of course, entitled to a transfer of title of said vehicles to them.

Record remanded with direction a new decree be entered in accordance with this opinion.