## Underwood v. Monte Asti Buick Co., Inc.

*Robert B. Truel*, for plaintiff.
*John R. Luke*, for defendant.

FINKELHOR, *J.*, April 8, 1976—The above action in equity[1] comes before the chancellor on plaintiff's prayer to rescind a contract for the purchase of a 1971 Opel automobile and to return to plaintiff either the purchase price of said vehicle or a new and similar car.

The resolution of this case rests on two basic legal issues: (1) the duty of the seller (defendant) of a motor vehicle to advise the purchaser (plaintiff) of repairs or replacements which may have been made to the vehicle prior to the purchase, and whether failure to so advise constitutes "fraud"; and (2) whether a purchaser who seeks rescission of a sale and refund of the full purchase price may continue to use the vehicle after notice to the seller.

---

1. Plaintiff's action is in equity for rescission due to alleged fraud and not in assumpsit for breach of warranty. See Galati v. Potamkin Chevrolet Co., 198 Pa. Superior Ct. 533, 181 A. 2d 900 (1962).

After a hearing held April 28, 1975, the chancellor makes the following findings of fact:

(1) Virgie Underwood, plaintiff, is a resident of Allegheny County, Pa., and is employed at Allegheny General Hospital as a practical nurse, and has been so employed for five years.

(2) Monte Asti Buick Co., Inc., defendant, is a Pennsylvania corporation, having its principal place of business in Sewickley, Allegheny County, Pa., and is engaged in the selling of new and used Buick and Opel automobiles as a franchise dealer of Buick Motor Company.

(3) On December 18, 1971, plaintiff purchased a 1971 Opel automobile for a cash selling price of $2,669.02 and a trade-in of a 1968 Opel for a credit of $1,072.02. The sale was financed by Mellon Bank.

(4) At the time of the sale, plaintiff was told that the automobile was a "demonstrator," but the vehicle was designated "new" and plaintiff received an "A" title.

(5) Said vehicle had, in fact, been seriously damaged prior to the sale to plaintiff and repairs included the replacement of the front bumper, molding and brackets, two front lamps and headlight shell, right rear quarter panel, right door panel and right front fender, front grill and front air panel. The cost to the dealer for repairing this vehicle, including tax, was $728.61.

(6) Plaintiff was never advised prior to sale, or at any time after sale when she returned the vehicle to defendant for repairs, inspection and adjustment, that said vehicle had been damaged prior to sale.

(7) Plaintiff discovered the prior damage to the vehicle in September 1973, almost two years after the sale, during a State inspection by another repair

shop, and it was necessary at that time to replace the right front fender.

(8) Plaintiff showed the vehicle to defendant's salesman, Mr. Dowdy, in September or October 1973, and in November 1973 presented the car for inspection to Monte Asti, the president of defendant company.

(9) On or about December 14, 1973, approximately three months after the discovery of the damage, plaintiff requested the return of her money from Monte Asti Buick and the rescission of the agreement.

(10) Plaintiff continued to use the car after notice to Monte Asti Buick, and as of November 1974 had driven the automobile approximately 36,000 miles.

(11) The basic complaint of plaintiff, regarding the function and performance of the vehicle, is that the tires wore out on the right side of the vehicle and that the right side rusted and required repairs.

(12) As of the date of trial, the vehicle had, in fact, been driven in excess of 50,000 miles.

(13) No evidence was presented by plaintiff of the specific diminution in value of the vehicle due to the pre-sale damages, other than the cost to the dealer to repair the vehicle for sale.

It is the position of defendant that he was under no duty to reveal to plaintiff prior repairs to the vehicle and that, even assuming such a duty, plaintiff failed to meet the prerequisites for rescission of the contract in that the vehicle was not returned to the seller.

It is plaintiff's position that the failure to reveal the previous repairs to the car amounted to fraud on the part of the seller, and that, upon discovery, plaintiff could rescind the agreement.

## FRAUD OR MISREPRESENTATION BY THE SELLER

Even though the instant case is a sales agreement and plaintiff is seeking to reject the product purchased, plaintiff seeks relief by way of an equitable rescission of the contract and not under the various remedies of the Uniform Commercial Code of April 6, 1953, P.L. 3, as amended, 12A P.S. §§1-101, et seq.[2] Plaintiff has not alleged a breach of an express (section 2-313) or implied (section 2-314) warranty, but that the concealment by the seller of a material fact, i.e., the major repair of the vehicle, tainted the agreement and, upon discovery, supports plaintiff's demand for rescission. However, both parties seek to argue their positions by sections of the Commercial Code and cases thereunder.

In denying preliminary motions by defendant-seller, the chancellor has already ruled that an action in assumpsit under the code provisions is not an exclusive remedy for the rescission of a sales agreement: sections 2-716 and 2-721. See Galati v. Potamkin Chevrolet Co., supra.[3]

However, in order to determine whether plaintiff has established fraudulent conduct on the part of the seller, the principles of the Uniform Commercial Code which govern sales transactions are relevant.

---

2. The Uniform Commerical Code cases deal with "revocation of acceptance" rather than the concept of "rescission": Sections 2-602, 2-608.

3. In Galati, plaintiff brought an action in equity to rescind a vehicle sales agreement on the basis of fraud. Cf. Casey v. Philadelphia Auto Sales Co., 428 Pa. 155, 236 A. 2d 800 (1968), where plaintiff alleges breach of warranty, the remedy is at law.

Thus, as stated in Purdon Commentary at 12A P.S. XXXIV—XXXV:

"Perhaps the most important provision in Article 1 [of the Code] is the explicit statement of an *obligation of good faith* in the performance or enforcement of every commercial transaction. Throughout the Act, and particularly in Article 2, this general obligation includes the observance of reasonable commercial standards by a merchant. Good faith is defined as *'honesty in fact'* and the comments repeatedly refer to its connotation of demanding fairness and preventing surprise in all commercial dealings." (Emphasis supplied.)

As defined in the Restatement, Contracts, fraud in the consummation of a sales agreement includes: (a) a knowing, intentional misrepresentation; (b) concealment; or (c) nondisclosure by any person intending or expecting thereby to cause a mistake in order to induce another to enter into a transaction: Restatement, Contracts, §471; Clement Martin, Inc. v. Gussey, 191 Pa. Superior Ct. 464, 157 A. 2d 412 (1959).

In Scaife Company v. Rockwell-Standard Corporation, 446 Pa. 280, 285 A. 2d 451 (1971), cert. denied 407 U.S. 920, the Pennsylvania Supreme Court defined fraud to include:

". . . anything calculated to deceive, whether by single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be direct falsehood or by innuendo, by speech or si-. lence, word of mouth, or look or gesture. It is any artifice by which a person is deceived to his disadvantage." 446 Pa. at 285, 286.

See also DeJoseph v. Zambelli, 11 D. & C. 2d 447 (1957), affirmed 392 Pa. 24 (1958); Ellis v. Harris, 122 Pitts.L.J. 29 (1974).

The purchase of motor vehicles by naive and nonmechanic oriented consumers is, of necessity, based upon the reliance of the buyer on the good faith of the dealer or seller. See code sections 1-203, 2-103(b). It is for this reason that consumer protection laws prohibit the sale of reconditioned or altered products as original or new: Consumer Protection Law of December 17, 1968, P.L. 1224 (No. 387), 73 P.S. §§201-1, et seq.

Thus, the duty placed on the seller is not limited to stated representations, but may also include concealment or nondisclosure of a *material* fact relating to the vehicle, particularly where the buyer is not competent or able to determine the defect from inspection. Cf. Pantano v. Zamer Motor Sales, 170 Pa. Superior Ct. 317, 85 A. 2d 681 (1952). Whether the nondisclosure of information amounts to fraud or misrepresentation, is, of course, dependent upon the circumstances of the transaction.

In the instant proceedings, plaintiff had previously dealt with defendant, she had no specialized knowledge or training related to the condition of motor vehicles, and the repairs to the vehicle were not discernible, absent a skilled examination.

While the salesman informed plaintiff that the Opel was a demonstration model, plaintiff was not informed that the vehicle has been substantially damaged and repaired. In view of the amount of damage which occurred to the vehicle, this constituted the withholding of a material fact which was not cured by informing plaintiff that it was a demonstration model. See Stanley, "Defective Automobiles and the U.C.C.", 18 Cleve. St. L.R. 527 (Sept. 1969). There is a substantial difference between minor repairs for scratches and other damages sustained during shipping and delivery and repair of one side of the vehicle, which equals ap-

proximately one-fourth of the value of the automobile. In equating the equities of the transaction, disclosure of such information places little or no burden on the seller, but is pertinent and material to the purchaser.

Therefore, under the facts of the instant case, the chancellor finds that plaintiff has sustained the allegations of misrepresentation by defendant and that material facts were not disclosed at the time of the purchase of the 1971 Opel.

## RESCISSION

A material misrepresentation inducing a purchaser to enter a contract or sales agreement can afford a ground for the equitable rescission of the agreement upon discovery of the misrepresentation: Myers v. Rubin, 399 Pa. 363, 160 A. 2d 559 (1960). However, after a buyer discovers facts which warrant rescission, the law imposes a duty to act promptly so that the parties may still be restored as nearly as possible to their original positions: Fichera v. Gording, 424 Pa. 404, 227 A. 2d 642 (1967); Galati v. Potamkin Chevrolet Co., supra.

As stated by the Superior Court in Galati, supra at 538:

"In Ajamian v. Schlanger, 20 N.J. Super. 246, 89 A. 2d 702 (App. Div. 1952), the relevant facts of which are similar to those in the instant case, the plaintiff sought rescission on the ground of fraud. In ruling that he had forfeited his right to rescind the court stated (Id. at page 249, 89 A. 2d at page 704): 'A party entitled to rescission on the ground of fraud may either avoid the transaction or confirm it; he cannot do both; and once he elects, he must abide by his decision. When he has discovered the fraud, or has been informed of facts and cir-

cumstances from which such knowledge would be imputed to him, he must thereupon act with diligence and without delay if he desires to rescind; and the transaction will be deemed ratified if he does any material act which assumes the transaction is valid.'"

Similar prerequisites for "rescission" or "revocation of acceptance" within a reasonable time are required under the Commercial Code and the buyer is required to tender the product to the seller. Again, a "reasonable time" is a question of fact, based upon the circumstances of the transaction: Erickson v. Krebs and King, April term, 1973, no. 1651.

Plaintiff discovered the prior damage to the vehicle in September 1973, notified defendant in September or October 1973, and in November 1973, presented the vehicle for inspection to the president of the defendant company. It was plaintiff's testimony that, in December, a request was made to Monte Asti for the return of the purchase moneys. However, plaintiff continued to use the vehicle up to the time of hearing, and had driven the Opel without major repair in excess of 50,000 miles.

Thus, even assuming that plaintiff gave timely notice upon the discovery of the misrepresentation, plaintiff, with full knowledge of the misrepresentation, continued to use the vehicle for a period of almost two years after discovery.

We are not willing to rule categorically that a motor vehicle must be returned to the dealer in order to support rescission, but, under the facts of the instant proceeding, the passage of time has grafted new equities upon the transaction. Despite the concealment or nondisclosure of a material fact, no evidence was presented to establish that

the car was not useable for the purposes for which it was purchased. Therefore, plaintiff's relief is limited to the damages flowing from the dealer's misrepresentation.

## DAMAGES

The burden of plaintiff's complaint that she is entitled to a return of either the full purchase price of the vehicle or a "new" 1971 Opel is not in accord with equitable principles, even where misrepresentation has occurred. Plaintiff is entitled to recoup her losses and out-of-pocket expenditures stemming from the breach, but not to make a "profit" from the transaction. However, the affirmation of a contract induced by fraud does not extinguish the right of the purchaser to recover damages for the fraud: Tilghman v. Dollenberg, 418 Pa. 604, 611, 213 A. 2d 324 (1965). Under the Uniform Commercial Code, plaintiff may recover the difference between the value of the goods received and the value they would have had if they had been as warranted: K & C, Inc. v. Westinghouse Electric Corp., 437 Pa. 303, 310, 263 A. 2d 390 (1970); Lampus Co. v. Neville Cement, 232 Pa. Superior Ct. 242, 336 A. 2d 397 (1975). See also Barrington Homes v. Kelley, 320 S. 2d 841 (Fla. App., 1975).

Thus, in the instant proceeding, plaintiff may recover the difference in value between the car, as sold, i.e., repaired after major body damage, and the value of a vehicle absent such prior damage, plus out-of-pocket expenses stemming from the dealer's misrepresentation.

However, since plaintiff's claim was for the return of the entire purchase price of the vehicle, there is insufficient testimony to determine with specificity an appropriate dollar amount for the damages to which plaintiff is entitled.

Therefore, the finding is a favor of plaintiff, but a hearing will be scheduled to determine the money damages in accordance with this adjudication.

An appropriate decree is attached hereto.

## CONCLUSIONS OF LAW

(1) Equity has jurisdiction.

(2) The nondisclosure by a seller of substantial damage and repair to a motor vehicle, prior to sale, is the withholding of a material fact and may constitute a misrepresentation of the condition of the vehicle by the seller.

(3) Such misrepresentation can be the basis of rescission of the agreement but plaintiff must act without delay, and continued use of the vehicle may bar rescission.

(4) In determining whether plaintiff is entitled to a return of the purchase price, the chancellor must also consider the benefit received by plaintiff from use of the vehicle.

(5) Affirmation of a contract induced by misrepresentation or fraud does not extinguish the right of plaintiff to recover damages stemming from the misrepresentation.

## DECREE NISI

And now, April 8, 1976, based upon the attached adjudication, it is hereby ordered, adjudged and decreed that plaintiff is entitled to compensation for: (1) the difference in value between a nondamaged demonstrator vehicle and the vehicle sold to plaintiff, with simple interest from the date of sale; and (2) all out-of-pocket expenses for repairs to the vehicle resulting from said prior damage, with simple interest from date of expenditure.

It is further ordered that a hearing, limited to damages, is scheduled for April 28, 1976, at 9:30 a.m. in Courtroom 6.