First Pennsylvania Bank N.A. *v.*
Weber (et al., Appellant).

Argued March 16, 1976. Before WATKINS, P.J., JACOBS, HOFFMAN, PRICE, VAN DER VOORT, and SPAETH, JJ. (CERCONE, J., absent).

*Manuel A. Spigler*, with him *Stassen, Kostos and Mason*, for appellant.

*Norman R. Bradley*, with him *Saul, Ewing, Remick & Saul*, for appellee.

OPINION BY JACOBS, J., June 28, 1976:

This appeal arises from denial of defendant-appellant Eagson Corporation's petition to strike or open a confessed judgment entered against it and three others by plaintiff-appellee First Pennsylvania Bank N.A. We have concluded that the lower court properly denied appellant's petition to strike or open and therefore affirm the order of the court below.

Plaintiff-appellee First Pennsylvania Bank N.A. ("Bank") entered judgment by confession on August 23, 1974 against defendants Joan M. Weber, Foerderer Tract Committee, Inc. ("Committee"), Forward Lands, Inc. ("Forward"), and appellant Eagson Corporation ("Eagson"), jointly and severally, in the amount of $2,805,497.14. The aforementioned defendants were signers of a note in the principal amount of $3,295,000.00 which was dated November 6, 1972. The note was secured by a mortgage of the same date upon premises known as the "Foerderer Tract."

On September 6, 1974, Eagson filed a petition to open or strike the judgment. Depositions were taken and oral argument was heard before the court below en banc, which dismissed appellant's petition. Eagson's contentions below, as set forth in its petition and on oral argument, were that the confessed judgment was unauthorized and excessive as to it and that it had a meritorious defense to the judgment. The latter claim consisted of its allegation that it was an accommodation party to the note, having been assured that no action

would be taken against it until remedies were exhausted against the principals, of a claim that it had been advised that it would be released when partial payment of the principal was made in the form of assignment of certain pledges and contributions, and of a claim that it was induced to sign the note based on the above representations. The lower court concluded that the judgment was neither unauthorized nor excessive as to Eagson. It further held that Eagson had failed to produce evidence of a meritorious defense "which in a jury trial would require the issues to be submitted to a jury." *See*, Pa.R.C.P. 2959(e).

On appeal to this Court appellant first advances two arguments relative to denial of its motion to strike. It claims that the court below erred in refusing to strike the judgment because the terms of the note are inconsistent with a loan agreement which was contemporaneously signed by the other defendants but not by Eagson. We observe initially that this argument does not appear from the record to have been made below. We may not, therefore, consider it on appeal to this Court. *See, e.g., Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). Moreover, even if the loan agreement was inconsistent, that fact would not provide a proper basis for granting a motion to strike on the facts of this case. In determining the validity of a confessed judgment which is attacked by a petition to strike we are limited in our review to matters appearing on the face of the record. *Northway Village No. 3, Inc. v. Northway Properties, Inc.*, 430 Pa. 499, 244 A.2d 47 (1968). On the face of the record of judgment before us we cannot conclude that the judgment should have been stricken on the basis set forth by appellant, since the judgment was regularly entered on the note and not on the loan agreement.

Eagson also claims here, as it did below, that the judgment should have been stricken because unauthorized and excessive as to it. Appellant is correct in its assertion that a warrant of attorney authorizing a

confession of judgment must be strictly construed and exercised in strict accordance with its terms. *E.g. Kline v. Marianne Germantown Corp.*, 438 Pa. 41, 263 A.2d 362 (1970). However, as noted above, on a motion to strike we are limited to the face of the record. The record reveals that Eagson executed the note as a co-maker together with the other co-defendants. The warrant of attorney contained in the note authorized any attorney of any court of record to appear for the signers of the note and to confess judgment against them in an amount equal to all unpaid principal and interest and all other sums due under the note and mortgage. The warrant of attorney was properly exercised and judgment was entered on the note without irregularity.

Appellant's claim that the judgment entered was unauthorized and excessive as to it is based on the fact that the note provided that *after* exercising the warrant of attorney the Bank was to limit Eagson's liability on the judgment, of record, to $280,000.00. Although Eagson might have been wiser to have signed a note for $280,000.00 in the first place, or to have insisted that the warrant of attorney authorize confession of judgment against it only to the extent of $280,000.00, we can perceive no irregularity or ambiguity in the course the parties chose, on the face thereof. The warrant clearly authorized the Bank to confess judgment against all defendants for the full amount due, *after which* it was to have the judgment index marked that Eagson and Forward's liability on the judgment was limited. The Bank has filed a praecipe to have the index so marked. Moreover, the judgment entered could not be grossly excessive as to Eagson where the Bank strictly followed the procedure set forth in the note and the authority given it by the Warrant of Attorney. *See Housing Mortgage Corp. v. Tower Dev. & Inv. Corp.*, 402 Pa. 388, 167 A.2d 146 (1961).

The judgment entered was thus neither unauthorized nor excessive and the lower court correctly denied Eagson's motion to strike.

We next turn to the second basis for Eagson's appeal, that the lower court erred in refusing to open the confessed judgment. In order to open a confessed judgment, the judgment debtor must act promptly and must produce evidence in support of a meritorious defense. *See, e.g., Wenger v. Ziegler,* 424 Pa. 268, 226 A.2d 653 (1967); *Wolgin v. Mickman,* 233 Pa. Superior Ct. 218, 335 A.2d 824 (1975). The sole basis for denial of appellant's petition to open in this case, as has been previously noted herein, was the lower court's determination that Eagson had not produced such evidence of a meritorious defense which in a jury trial would require the issues to be submitted to a jury. *Wolgin v. Mickman,* supra at 221-22, 335 A.2d at 826; Pa.R.C.P. 2959(e). We must therefore review the evidence produced by Eagson in a light most favorable to Eagson to determine if that evidence was sufficient to prevent a directed verdict against appellant. *See, Greenwood v. Kadoich,* 239 Pa. Superior Ct. 372, 357 A.2d 604 (1976); *Joseph A. Puleo & Sons, Inc. v. Rossi,* 234 Pa. Superior Ct. 612, 340 A.2d 557 (1975).

The record developed below consists of depositions, the petition and answer and various documents filed with the lower court. It appears from the evidence established thereby that the note in question was executed as a part of a land development plan involving the respective parties defendant in varying capacities and to varying degrees. Edwin K. Daly, Jr., Esquire ("Daly"), whose deposition was not taken, was a principal figure in the transaction. Representing the Committee, he first approached the Bank in early 1972 with a plan to obtain a loan to finance the purchase of the so-called "Foerderer Tract" from Villanova University. The Committee's planning called for development of single family residential home lots and for sale of part of the tract to Montgomery County for a park. The Bank thereafter determined that the value of the entire tract, even if subdivided, would be insufficient to collateralize the amount of the loan sought. In order to obtain the full

amount sought, Daly offered additional collateral in the form of the assignment of certain contracts of sale. He also offered to put up Eagson's adjoining property to collateralize $280,000.00 of the loan.

Furthermore, because the proposed price for sale of the park land to Montgomery County was less than the appraisal value assigned to that land if subdivided, it was proposed that pledges and contributions of benefactors would be assigned to the Bank in an amount sufficient to cover the deficiency in collateralization that would result from the sale, if consummated.

Daly procured Eagson's consent to use its land as collateral and arranged for subordination of a mortgage already existing thereon. Further discussions were held between the Bank, Daly and a realtor, culminating in preparation and transmittal of a letter of commitment, addressed to Daly, dated June 8, 1972. The letter listed the security for the loan as comprising the "249 acres including house and other improvements known as Foerderer Tract" (This description is inclusive of both the Committee property and of Eagson's property), and the assignment of certain contracts of sale having a balance yet to be paid. Under the heading "additional collateral" the letter listed certain personal guarantees of Committee members and the assignment of pledges received.

The loan was closed on November 6, 1972 at the offices of the Commonwealth Land Title Insurance Company. Eagson's president and assistant secretary attended as did Daly, the other defendants' representatives and counsel for the Bank. Almost two years later, the note being in default, the Bank confessed the judgment complained of.

The defense which appellant urges is meritorious is its claim that it was an accommodation party to the note and that it was induced to sign the note by misrepresentations made by or with the knowledge of the payee Bank. The misrepresentations appellant claims were made were: (1) that it would be released from the note

after assignment of pledges; and, (2) that it would be made liable on the note only after all remedies were exhausted against other parties. The lower court held that Eagson's evidence of misrepresentation was insufficient to constitute a defense to the Bank's action.

We initially observe that the record does not reveal that appellant produced evidence showing that these representations were made by the Bank. To the contrary, the evidence affirmatively showed that if any misrepresentations were made, they were made by parties *other* than the Bank.[1] The appellant never dealt directly with the Bank and the note Eagson signed expressly provided otherwise than the representations said to have been made. At best, Eagson's evidence showed that the Bank's counsel probably overheard the representations at the loan settlement. We agree that Eagson's evidence of misrepresentation was not sufficient to present a jury question on the Bank's right to recover on the note.

Moreover, the lower court also held, in part, that Eagson presented no evidence which could be submitted to a jury because its evidence of promises was inadmissible under the parol evidence rule. We agree with this determination as well. It has long been established that oral testimony or prior or contemporaneous oral agreements cannot be introduced to vary or contradict

---

1. Appellant claims that the commitment letter, which listed the assignment of pledges as "additional collateral", constitutes a misrepresentation by the bank. The letter was not addressed to Eagson, nor does it specifically mention Eagson. No evidence was produced to show that it was contemplated that it would be sent to Eagson, although appellant did in fact obtain a copy of it. Moreover, the letter does not indicate or imply that assignment of this "additional collateral" would result in the release of any party. Rather, it specifically states that the eight acre tract (which was Eagson's) and the manor house were to remain under the lien until the loan was paid in full. We fail to see how this constitutes the misrepresentation of which appellant complains nor can we conclude that appellant could have justifiably relied on this letter for the proposition that it would be released.

the terms of a written agreement. *See, e.g., Corn Exchange Nat'l Bank & Trust Co. v. Burkhart,* 401 Pa. 535, 165 A.2d 612 (1960). Nevertheless, in its brief appellant advances two theories under which it claims that the alleged promises could be admitted into evidence to operate as Eagson defenses, in spite of the above rule.

Appellant's first theory is that the promises were misrepresentations which induced its entry into the agreement. In support of this argument appellant cites *Myers v. Rubin,* 399 Pa. 363, 160 A.2d 559 (1960) and *LaCourse v. Kiesel,* 366 Pa. 385, 77 A.2d 877 (1951) for the proposition that misrepresentations of material fact inducing a party to enter into an agreement or undertake an obligation confer a right to rescind, if there is reliance, and that the misrepresentations may be proven by parol evidence. In such a case the purpose of the oral evidence of fraud is not to alter or vary the terms of the written instrument, but to strike the writing down as though it had never been in existence. *LaCourse v. Kiesel,* supra at 390, 77 A.2d at 880. Eagson therefore claims that it has a defense to the Bank's action in the form of fraud and that its evidence is admissible to prove that defense.

Eagson's arguments on this point overlook an important aspect of the above theory, however, that the fraud involved must consist of misrepresentations of presently existing material fact. Mere promises to do something in the future, and not statements of existing facts which are untrue, made by a third party, do not in themselves constitute the type of fraud that avoids the effect of the parol evidence rule. *Sokoloff v. Strick,* 404 Pa. 343, 172 A.2d 302 (1961). *See, Nissenbaum v. Farley,* 380 Pa. 257, 110 A.2d 230 (1955); *First Pennsylvania Banking & Trust Co. v. McNally,* 200 Pa. Superior Ct. 196, 188 A.2d 851 (1963); *Neale v. American Motorists Fire Ins. Co.,* 185 Pa. Superior Ct. 60, 138 A.2d 290 (1958).

The representations alleged to have been made here were made by a third party and were alleged

agreements to do (to release Eagson after assignment of the pledges), or to refrain from doing (to hold Eagson harmless until after others were proceeded against), something in the future. These unperformed promises are not fraud such as to take Eagson's proofs out of the rule forbidding evidence of the prior or contemporaneous verbal agreements alleged. The note, which does not contain these agreements, therefore controls, and appellant has failed to state a meritorious defense.

Appellant's second theory on this point is that the parol evidence rule does not preclude oral proof of the accommodation character of a party's signature. Eagson correctly cites *Philadelphia Bond & Mortgage Co. v. Highland Crest Homes, Inc.*, 221 Pa. Superior Ct. 89, 288 A.2d 916 (1972) in support of this exception. Appellant also cites the *Highland Crest* decision for the proposition that an accommodation party who is induced to sign as such by false representations made by the holder of an instrument has a defense to an action thereon by the holder. This latter aspect of the *Highland Crest* ruling is, however, inapposite to the instant circumstance because, as the court below observed, *Highland Crest* is factually distinguishable from the case at bar.

In *Highland Crest*, this Court repeated the well-settled rule that the holder of an instrument who has taken it for value has the rights of a holder in due course against an accommodation party who signed as maker. We further stated that there is but one exception to that rule: "where the *holder* has induced the maker to become an accommodation party, as by *actually agreeing* that he should not be held liable as a principal." *Id.* at 93, 288 A.2d at 918 (emphasis added).

In the present situation Eagson's evidence does not place it within the ambit of the foregoing exception to the rule that an accommodation maker is liable as a principal. Eagson has not shown that the holder, the Bank, induced it to become an accommodation party, nor has it shown that the Bank actually agreed that Eagson would not be held liable as principal. Eagson has shown

that the co-makers of the note induced it, not the holder-Bank.

Thus, even if Eagson may arguably show by parol that it was an accommodation maker, the characterization of Eagson as such provides it with no defense against the Bank. This is true because an accommodation maker's agreement with the party accommodated does not alter its position of liability to a holder for value, notwithstanding that at the time of taking the instrument the holder knew the maker to be an accommodation party. *See Roller v. Jaffee*, 387 Pa. 501, 128 A.2d 355 (1957); *United States Nat'l Bank v. Evans*, 296 Pa. 541, 146 A. 126 (1929); *Chestnut Street Trust & Savings Fund Co. v. Hart*, 217 Pa. 506, 66 A. 870 (1905); *Wilner v. Croyle*, 214 Pa. Superior Ct. 91, 252 A.2d 387 (1969); 12A P.S. §3-415(2). *See also, Commerce Nat'l Bank v. Baron*, 336 F. Supp. 1125 (E.D. Pa. 1971). As was said in *United States Nat'l Bank v. Evans*, supra at 548, 146 A. at 128: "[i]t will be remembered that the suit is not brought here by the one who supposedly made the inducing promise … but by the bank which duly … paid out as directed."

Since appellant failed to show fraud by the Bank such as to vitiate the agreement and did not produce admissible evidence which would alter its liability thereunder, it did not produce evidence of a meritorious defense which would require submission of the issues to a jury. The court below therefore properly denied Eagson's petition to open.

Order affirmed.