394 A.2d 1288

EXXON CORPORATION

v.

Robert J. WILSON, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 13, 1978.

Decided Nov. 22, 1978.

Martin J. Resnick, Philadelphia, with him Norman P. Zarwin, Philadelphia, for appellant.

John M. Phelan, Jr., Philadelphia, for appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that a judgment in ejectment confessed against him should be opened because appellee Exxon Corporation (Exxon) violated its franchisor-franchisee relationship with appellant by failing to renew the lease of the franchise premises. We disagree and affirm the order of the court below refusing to open judgment.

Appellant is the operator of an Exxon gasoline service station at Route 202 & Allendale Road in King of Prussia. From February 6, 1975 to February 6, 1976, he was in possession of the premises as Exxon's lessee, with a monthly rental of 1.7 cent per gallon on the first 60,000 gallons of gasoline purchased, and 0.5 cents per gallon on each gallon thereafter. However, as a result of federal government price controls pursuant to the Economic Stabilization Act of 1970, the rent stated in the lease was modified to 1.5 cents

per gallon on the first 60,000 gallons purchased. Near the end of the term, Exxon submitted to appellant a new lease containing a rental reopener clause,[1] which with certain limitations, would have allowed Exxon to raise the station rent by not more than one cent per gallon once during the term. Appellant, who anticipated the lifting of price controls sometime during the next term, refused to sign this lease. When appellant held over at the end of the term of the existing lease, Exxon elected to treat him as a tenant for another year, until February 6, 1977, under the terms of the original lease. On June 29, 1976, Exxon notified appellant that the federal controls had indeed been lifted, and that his rent would be increased in stages to 1.69 and 1.89 cents per gallon on all gasoline purchased, under the "extensions and renewals" clause of the lease.[2]

On November 5, 1976, Exxon notified appellant that it would not again renew his old lease, but rather would require appellant to execute a new lease for the 1977–78 term. Thereafter, Exxon and appellant, who retained counsel, engaged in extensive negotiations in an attempt to arrive at a mutually satisfactory lease. Exxon submitted five different proposals, all of which were turned down by appellant. The closest that the parties came to agreement was when appellant offered a flat annual rent of $17,000; Exxon countered with $19,116. To break the stalemate, Exxon offered appellant the opportunity to have the property independently appraised and to produce his own financial records of the profitability of the franchise, and promised to reconsider its own position if appellant showed that Exxon's proposed rent was disproportionate to the value of the premises or would work a financial hardship on appellant's business, but appellant took no action with respect to this offer. On February 24, 1977, Exxon sent appellant a notice to quit by March 26, 1977. However, Exxon continued to make offers to appellant until the very end. On March 11,

1. *See Witmer et al. v. Exxon Corp.*, 260 Pa.Super. 537, 542–543 n.1, 394 A.2d 1276, 1278 n.1 (1978).

2. *See id.* at 543–544 n.4, 394 A.2d at 1279 n.4.

1977, Exxon offered four different rental plans which appellant could accept not later than March 21, 1977. Appellant refused all four offers. Finally, on March 24, 1977, Exxon made its last offer of $18,000 per year flat rental plus 0.8 cents per gallon purchased over 66,666 gallons; which offer appellant could accept not later than noon on March 26, 1977. Appellant again declined to accept, and on March 26, 1977, refused to vacate the premises.

On March 28, 1977, Exxon confessed judgment in ejectment against appellant. Appellant filed a Petition to Open Judgment on April 7, 1977. After depositions were held and argument before the court *en banc* below, the court on November 4, 1977, entered an order refusing to open judgment. Appellant obtained a supersedeas, and now appeals this order to us.

A party seeking to open a confessed judgment must set forth a meritorious defense, *Triangle Building Supplies & Lumber Co. v. Zerman*, 242 Pa.Super. 315, 320, 363 A.2d 1287, (1976), and must produce evidence in support of its defense which would require submission of the issue to a jury in a jury trial. Pa.R.Civ.P. 2959(e); *Foerst v. Rotkis*, 244 Pa.Super. 447, 452, 368. A.2d 805, (1976). When this standard is not met, the court must refuse to open judgment. *First Pennsylvania Bank v. Weber*, 240 Pa.Super. 593, 360 A.2d 715 (1976). An appellate court will reverse only for a clear and manifest abuse of discretion. *Foerst v. Rotkis, supra* at 450, 368 A.2d at 807.

The Gasoline Act,[3] which controls this case, provides that a lessor supplier like Exxon may not cancel, terminate, or fail to renew a lease with a dealer except for certain enumerated reasons[4] and upon 90 days notice.[5] However, the next section of the Act provides an exception:

3. Act of November 26, 1975, P.L. 454, No. 126; 73 P.S. § 202–1 et seq. (Supp. 1978–79).

4. *Id.* at § 3(b)(1–9).

5. *Id.* at § 3(a). Exxon sent notice to appellant that it would not renew appellant's lease November 6, 1976, far more than 90 days before March 26, 1977, when appellant was to quit the premises.

"Nothing in subsection (b) shall prohibit termination, cancellation, or failure to renew:

"(1) if there is a failure on the part of the lessor supplier and the lessee dealer to agree upon the terms of a renewal agreement where both parties have acted in good faith in trying to effect such a renewal."

73 P.S. § 202–3(c)(1) (Supp. 1978–79).

The undisputed facts in the record fully supported the finding of the court below that both sides engaged in serious, extensive negotiations over a five-month period to attempt to make a mutually satisfactory lease, but without success. The parties were at times very close to agreement, and Exxon went "down to the wire" with last-minute proposals in an effect to keep appellant as a franchisee. Under these circumstances, § 3(c)(1) of the Gasoline Act allows Exxon to terminate the franchise.

There is nothing in *Atlantic Richfield Company v. Razumic*, 480 Pa. 366, 390 A.2d 736 (1978) which compels a different result; the termination here was not arbitrary, but rather the failure to agree upon a new lease after months of good faith negotiations. Here, the lower court found on undisputed evidence contained in the depositions that Exxon was not trying to coerce appellant out of his franchise, but rather wanted very much to retain appellant as a lessee, albeit at a higher rent. We conclude that the lower court did not abuse its discretion in refusing to open judgment since appellant has shown no meritorious defense.

Order refusing to open judgment affirmed.

PRICE, J., files a concurring statement.

PRICE, Judge, concurring:

I do not consider the parties to be in a franchisor-franchisee relationship, therefore in that particular only do I disagree with Judge Hoffman.