404 A.2d 403

Merrill TAUB and Anthony H. Harwood, Trustees for Institutional Investors Trust

v.

**CEDARBROOK JOINT VENTURE, John W. Merriam, Thomas Wynne, Inc., Cedarbrook Realty, Inc., and Witchwood, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued Sept. 13, 1978.

Decided Dec. 29, 1978.

Petition for Allowance of Appeal Denied April 17, 1979.

Jeffrey A. Less, Philadelphia, for appellants.

Henry W. Sawyer, III, Philadelphia, for appellee, Institutional Investors Trust.

Before JACOBS, President Judge, and CERCONE and LIPEZ, JJ.

JACOBS, President Judge:

The three appeals consolidated for argument and decision in this case arise from separate orders by the court below dismissing appellants' petition to open three confessed judgments. The issue we must decide is whether the lower court abused its discretion by refusing to open the judgments after it found that appellants failed to produce sufficient evidence to submit the case to a jury. For the reasons that follow, we find no error, and therefore affirm the orders appealed from.

In December, 1973, Institutional Investors Trust (IIT) loaned $16,800,000 to appellants for development of apartments, a shopping center, and a country club. Due to a restriction on the amount IIT could lend on a single note, four separate notes and mortgages evidencing the aggregate loan amount were executed. Each mortgage encumbered four tracts of land owned by appellants. One of the notes, the $9,000,000 apartment house loan, was subsequently purchased by Fidelity Bank, leaving IIT as holder of the three remaining mortgage notes.

Howard A. Gellis, an IIT trustee, stated in deposition that at the time the loans were made, IIT was aware of a deficit in the income from the properties, even though the occupancy rate was 94% for the apartments and 90% for the shopping center. Gellis also indicated that IIT realized the loans could only be repaid if the apartments were converted to tenant ownership. To this end, paragraph 3.13 of the loan agreement between the parties provides in part that none of the Cedarbrook Companies shall change its business, except

to convert the apartments to cooperative apartments or condominium units as authorized.[1]

The contemplated conversion to cooperative or condominium ownership was not accomplished, however, because Prudential Insurance Company, the senior mortgagee on the apartment house tract, would not grant the necessary approval. As a result, Merriam devised a conversion plan designated "unilease," providing for a long-term lease by tenants with an option to purchase after thirty-five years.[2] Prudential approved the unilease plan, whereupon appellants sought covenants of non-disturbance from IIT.[3] IIT consented to the non-disturbance agreements, subject to certain

1. In addition, section 5 provides:

   5. *Covenants of each Company as to Indebtedness, Encumbrances, Working Capital, etc.* Each Company covenants and agrees that until such time as all of the Notes, interest thereon and premium, if any, have been paid in full, none of the Companies shall, without the written consent of the holders of 75% of the Notes, do any of the following:

   \* \* \* \* \* \*

   5.3. *Mergers and Acquisitions.* Be a party to any merger or consolidation or sell all or substantially all of its assets, other than the sale of the Apartments as cooperative apartments or condominium units as hereinafter authorized, or acquire any additional subsidiary or make any investment, directly or indirectly, in another corporation or business entity. Record at 63a–64a.
   Furthermore, section 12.1 states in part:
   Nothing herein contained shall be deemed to prohibit the Companies from converting the Apartments or any of them to condominiums provided Purchaser shall have first approved in writing the plan of conversion and the schedule of unit prices, and the Companies and the Purchaser shall have established a mutually agreeable procedure and schedule for obtaining releases of the liens of the Mortgages. Record at 72a.

2. The unilease concept, as explained by Merriam, provides the purchaser with a perpetual leasehold estate convertible to fee simple title after thirty-five years. Record at 177a–79a. The Cedarbrook Companies obtained an I.R.S. ruling permitting unilease purchasers to deduct that portion of their monthly payments representing taxes and interest payable on the deferred portion of the purchase price. Record at 543a–47a.

3. The non-disturbance covenants would have protected unilease purchasers from any action by IIT in the event of default on the Cedarbrook loans, as long as the purchaser's unilease obligations were met.

conditions.[4]   When the conditions were not satisfied, the covenants were not given, and the unilease plan became unmarketable.   Without conversion of the apartments, the loans fell into default, and IIT confessed judgment on the three notes on May 28, 1976.   Appellants petitioned to open the judgments, and after a hearing in the court below, the petition was dismissed.[5]   This appeal followed.

■   Pa.R.C.P. 2959(e) provides in part that a confessed judgment shall be opened if evidence is produced by the judgment debtor which, in a jury trial, would require submission of the issues to a jury.   We examined the evidentia-

4. The eight conditions were as follows:
   1) All the other lenders agree to give similar non-disturbance agreements.
   2) The non-disturbance agreement is cancellable after 24 months in the event that less than 50% of the units (based on square footage) have not been sold through the Unilease program.   This provision must be applied on a building by building basis.
   3) IIT must approve the Unilease purchasing structure and marketing budget, and must have the right of approval over price structure.
   4) All principal payments (or cash purchase sale proceeds) shall be held in escrow until the 50% sales figure has been reached. Interest on the escrow account would be treated as an element of cash flow.   At the end of 24 months, if the program were effective, an agreed upon percentage of the money would be paid out to Prudential as a reduction of their loan, with the balance to IIT.   Otherwise it could be returned to the Unilease purchaser to cancel the sale.
   5) The non-disturbance agreements will contain an attornment provision.
   6) A "beefed up" rental and rental marketing program shall be initiated and continued for the buildings not initially covered by the Unilease program.
   7) You shall continue to make all books and records available for inspection by an individual designated by IIT, and shall otherwise cooperate in supplying all information requested.
   8) All conditions recommended or suggested by Pennsylvania counsel for IIT be complied with in full in the time and manner called for.
   Record at 554a–56a.

5. The initial petition to open the judgments included a motion to strike all three judgments for improper verification of the complaint, and failure to set forth the residence addresses of the parties.   The court below rejected these bases for relief, and appellants have not pursued them here.   Brief of Appellants at 5–6.

ry standard in *Greenwood v. Kadoich,* 239 Pa.Super. 372, 376, 357 A.2d 604, 606 (1976), and said:

> [T]he standard of sufficiency here is that employed on consideration of a directed verdict, the facts must be viewed in the light most favorable to appellant and we must accept as true all evidence and proper inferences therefrom supporting [the] defense . . . and must reject the adverse allegations of appellee.

*See also Kardos v. Morris,* 470 Pa. 337, 368 A.2d 657 (1977).

■ In their petition to open, appellants allege that IIT breached its obligation under the loan documents to permit conversion of the apartments to tenant ownership, and thereby directly caused the loan default. We cannot agree. Our examination of the relevant contractual provisions leads us to agree with the court below that IIT was under no obligation to approve the unilease plan, and that the evidence presented by appellants, viewed in their favor, would have been insufficient to avoid a directed verdict.

We recognize the fact that all parties to the loans were aware that conversion of the apartments was essential to avoid default by appellants; appellee does not dispute this fact.[6] Under these circumstances, therefore, IIT could not unreasonably withhold its approval of condominium or cooperative conversion, and subsequently take advantage of a failure of performance caused by it. *See, e. g., Nanty-Glo Borough of American Surety Co.,* 316 Pa. 408, 411–12, 175 A. 536 (1934); 5 Williston, Contracts § 677 (1961).

However, the record before us demonstrates that the contemplated conversion of the apartments to cooperative or condominium ownership was frustrated by Prudential Insurance Company, the senior mortgagee, and not by IIT.

---

**6.** The opinion of the court below concludes that IIT was not bound by the terms of the loan agreement to approve cooperative or condominium conversion. We, however, have concluded that IIT could not unreasonably withhold its approval of such conversion. This difference of opinion has no effect on the disposition of this case, in light of our agreement that IIT was not obligated to approve the unilease plan.

Appellants, nonetheless, do not allege that IIT failed to approve cooperative or condominium conversion. Rather they contend that appellee failed to grant the covenants of non-disturbance by attaching onerous conditions to their approval thereof, and thereby effectively rejected the unilease plan. We read the record otherwise. Once the contemplated conversion failed through no fault of IIT, the unilease plan was proposed by the Cedarbrook Companies. Although the plan was novel and untested, and therefore beyond the original contemplation of the parties, IIT conditionally agreed to the plan, in spite of its fears that the apartments might be encumbered by the long-term rights of unilease holders.[7]

▇ Appellants, however, did not fulfill the conditions attached to IIT's approval, and now urge us to consider parol evidence in support of their contention that the unilease plan was a type of condominium conversion contemplated by the original agreement. We find, however, that these assertions are barred by the parol evidence rule, and cannot therefore be considered on a motion to open a confessed judgment. *See generally, First Pennsylvania Bank N. A. v. Weber,* 240 Pa.Super. 593, 360 A.2d 715 (1976).

▇ As a consequence, we find from the record before us that IIT did not prevent conversion of the apartments to cooperative or condominium ownership, and that IIT was not required under the agreement to approve unilease conversion. Moreover, the failure of unilease conversion leading to default on the loans was caused by appellants' failure to fulfill IIT's conditional approval thereof, and insufficient evidence was presented to take these issues to a jury.

▇ Finally, appellants have alleged the existence of a defense to their default in cash flow payments under the

7. It is important to note that a default on the loans was obviously not in IIT's best interests, as it could only be repaid upon conversion of the apartments to tenant ownership. More importantly, Prudential was senior mortgagee on the apartment houses, and Merriam was holder of the $9,000,000 apartment house loan, which was senior to the three notes held by IIT, and was secured by all four properties owned by the Cedarbrook Companies.

loan agreements, and contend that the judgment should be opened to permit proof of that defense. The crux of this contention arises from sections 2.24 and 23 of the loan agreement, which provide that IIT is not entitled to cash flow payments until the senior creditor is paid. Claiming insufficient cash flow, appellants contend IIT was not entitled to payment thereof, and therefore no default occurred. Regardless of the merits of appellants' position on this issue, we need not decide the question, because of the admitted default on interest payments which provided a clearly sufficient basis for the entry of judgment.

For all of the foregoing reasons, the orders appealed from are affirmed.